UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON ADAMS, on behalf of himself and others similarly situated, | CASE NO. 1:19CV1544 |
| | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| WENCO ASHLAND, INC., WENCO AKRON LLC, WENCO INDIANA LLC, WENCO MANAGEMENT LLC, and WENCO WOOSTER, INC. d/b/a WENCO WENDY'S, | |
| Defendants. | |

This matter is before the Court upon a motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b) filed by Plaintiff Jason Adams ("Plaintiff") on January 31, 2020 in this Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and Ohio Minimum Fair Wage Standards Act pursuant to Ohio Revised Code § 4111.01 *et seq.* ("Ohio Wage Laws") action. ECF Dkt. #18. Plaintiff requests that the Court enter an Order: (1) granting conditional certification of the proposed Collective; (2) approving Plaintiff's Proposed Notice, Consent to Join Form, and Reminder Notice, attached as Exhibits I and J, and authorizing their dissemination as proposed by Plaintiff; and (3) requiring Defendant to produce certain information for all Collective Members within 2 weeks after the Court's Order is docketed. ECF Dkt. #18. On February 26, 2020, Defendants Wenco Ashland, Inc., Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc. (collectively, "Defendants") filed an opposition brief with several attached exhibits. ECF Dkt. #25. The parties also filed several reply and sur-reply briefs. *See* ECF Dkt. #s 29, 32, 33-1, 34.

**I.  PLAINTIFF'S SUPPORTING TESTIMONY AND DOCUMENTS**

In support of his motion, Plaintiff provided a declaration detailing his experiences and observations while working for Defendants (ECF Dkt. #19-2), several job postings from some of Wenco Wendy's locations (ECF Dkt. #19-1), company policy documents (ECF Dkt. #s 19-3 through 19-8), and Defendants' admissions from its Answer (ECF Dkt. #s 12, 37). Plaintiff avers

that these exhibits show that he and other Assistant General Managers ("AGMs") who worked for Defendants were similarly situated because they evidence that Defendants maintained uniform policies and practices across its restaurants and that the AGMs suffered similar harm. *See* ECF Dkt. #18 at 19-25.

In his sworn declaration, Plaintiff described his employment history, unpaid overtime experience, job duties, and how he was similarly situated to other AGMs. Plaintiff worked for Wenco Wendy's as an AGM in Ashland, Ohio from approximately June 2018 to December 2018. ECF Dkt. #19-2 ¶1. In relevant part, he stated:

> 6. As an AGM, I regularly worked, on average, over 50 hours each week. Other AGMs also regularly worked over 50 hours per week. I know this because I discussed this with my District Manager, Cristina Rice. I was aware that in each district there were approximately two or three AGMs, and Ms. Rice informed me that everyone in a salaried position worked a minimum of 50 hours per week. I also observed that the AGM in the Wendy's at the Wooster location also worked over 50 hours a week.

ECF Dkt. #19-2 at 3 ¶6. He also stated:

> 21. I observed other AGMs performing the same mix of job duties that I performed including a large amount of hourly work. For example, when I visited the Wooster Wendy's location to drop off or pick up deliveries, I observed the Wooster Wendy's AGM preparing food and cooking sandwiches.
>
> 22. At the two locations where I worked, the operations were similar. At both those restaurants, my job duties also were similar.
>
> 23. I worked as an AGM under two separate GMs, Justin (last name unknown) and Chris (last name unknown) and under each of the GMs my job duties were similar.
>
> 24. To my knowledge, AGMs were not required to undergo any additional training when they transfer from one restaurant to another. I know this because when I was transitioned from one location to the other, I performed the same duties and was not given additional training.

ECF Dkt. #19-2 at 6 ¶¶ 21-24.

Plaintiff provided several handbooks and other policy documents from Defendants. *See* ECF Dkt. #s 19-3 (Wenco Employee Handbook); 19-4 (Wenco Associate Relationship

2

Agreement)[1]; 19-5 (Wenco EEO Policy); 19-6 (Wenco Anti-Bullying Policy); 19-7 (Wenco Substance Abuse Policy); 19-8 (Wenco Dress Code Policy). Some of the documents refer explicitly to all the Defendants, whereas others refer simply to "Wenco," "Wendy's," or even more generally, the "organization." Plaintiff signed all of the policy documents.

In addition, Plaintiff supports its motion with Defendants' admission from its Answer. *See* ECF Dkt. #18 at 13, 22-23; #29 at 8. Defendants admitted that they required Plaintiff and other AGMs to work more than 40 hours per workweek and did not pay them overtime compensation for hours worked beyond 40 hours in any workweek. *See* ECF Dkt. #1 (Compl.[2]) ¶7; #12 (Ans.) ¶7. Plaintiffs also refer to certain statements from Defendants to show that Wenco Akron LLC, Wenco Indiana LLC, Wenco Wooster, Inc. apply the same overtime compensation policies, practices, and procedures to all AGMs at each of its locations. ECF Dkt. #18 at 13 (citing ECF Dkt. #1 (Compl.) ¶¶ 35, 40, 51; #12 (Ans.) ¶¶ 35, 40, 51.

Plaintiff further provided job postings for AGM positions in Bluffton, Mishawaka (McKinley Ave) (dated mid-September 2018); Restaurant Manager[3] positions in Columbia City, Dalton (dated mid-September 2018); and a general Assistant General Manager and General Manager position in both Chapel Ridge (Fort Wayne, IN) and Macedonia, OH (both dated March 27, 2019). ECF Dkt. #19-1. Except for the latter two postings from 2019, these job postings appear to be virtually identical. *Id.*

Defendants attack the strength of the job postings in several ways, including the specific duties requiring certain managerial functions that would support an exempt FLSA classification. ECF Dkt. #25 at 21-22. Defendants also contend that the job duties in the postings are not

---

[1] The Wenco Associate Relationship Agreement is a contract between the signing employee (here, Plaintiff Jason Adams) and all of the Defendants (Wenco Akron LLC, Wenco Ashland Inc., Wenco Indiana LLC, Wenco Management Inc. and Wenco Wooster Inc.). ECF Dkt. #19-4.

[2] Plaintiff filed an Amended Complaint that is identical to the original. ECF Dkt. #35-2. The Amended Complaint corrects an undisputed error concerning the dates Plaintiff was employed by Wenco Wendy's in ¶16 of the Complaint. *Id.* For ease of reference, the Court will refer to the original Complaint and Answer as both parties have in their briefs.

[3] Defendants explain that the job postings for "Restaurant Manager" are generic and are used to solicit applications for managers at all levels, from General Manager down to Shift Manager. ECF Dkt. #25 at 21.

specific enough to ascertain AGMs' or Regional Managers' ("RMs") day-to-day activities, such that they support a finding that all AGMs and RMs employed by all five Defendants in all 64 restaurants primarily perform non-exempt job duties. *Id.* at 22-23.

## II. ANALYSIS

### A. Conditional Certification Standard

The FLSA requires an employer to compensate an employee at a higher rate for any hours worked in excess of the regulated forty-hour work week, unless a statutory exemption applies. *See* 29 U.S.C. §§ 207(a)(1) & 213. A plaintiff asserting an FLSA violation can bring a representative action "[o]n behalf of himself … and other employees similarly situated." 29 U.S.C. § 216(b). To bring an FLSA representative action, two requirements must be met: "(1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal citations omitted). An FLSA representative action is called a collective action and is different from a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, in that it utilizes an opt-in mechanism rather than the opt-out mechanism employed under Rule 23. *Id.*

To bring a collective action under the FLSA, opt-in plaintiffs must be "similarly situated," which does not ordinarily require the court to assess the merits of the case. *Barker v. Stark Cty.*, Ohio, No. 5:19CV276, 2020 WL 1288807, at *2 (N.D. Ohio Mar. 18, 2020) (citing *Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 826 (N.D. Ohio 2011)). Courts in the Sixth Circuit follow a two-step procedure to determine whether to certify a collective action under the FLSA. During the first step, the standard for certification requires only "a modest factual showing" that the plaintiff is similarly situated to the other employees they seek to notify. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)[4]. "Opt-in plaintiffs need not

---

[4] Once the district court grants conditional certification, potential plaintiffs receive notice informing them of their right to "opt-in" to the law suit. The second phase of the class certification process under the FLSA takes place upon the completion of discovery, when the court has more information about the plaintiff and potential class members. *Comer*, 454 F.3d at 547. During this phase, the court employs a stricter standard to determine whether the plaintiff and the class members are similarly situated. *Id.* (citing *Morisky v. Pub. Serv. Elec. & Gas. Co.*, 111 F.Supp.2d 493, 497 (D.N.J.2000)). After discovery, the defendant may move to decertify the class or divide the class into subclasses. *See*

be identical, but the plaintiff has the burden of showing that the putative class is similarly situated with regard to the claims asserted." *Id.*; *Comer*, 454 F.3d at 546-47; *Beetler v. Trans-Foam, Inc.*, No. 5:11CV132, 2011 WL 6130805, at *1 (N.D. Ohio Dec. 8, 2011) (Limbert, M.J.).

The plaintiff's burden to show that his position is similar, not identical, to the positions held by other putative class members "is lighter than 'that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively.' " *Beetler*, 2011 WL 6130805, at *1 (internal citations omitted). Courts assess a plaintiff's showing under a "fairly lenient standard, and [it] typically results in 'conditional certification' of a representative class.' " *Comer*, 454 F.3d at 547 (internal citation omitted).

The Sixth Circuit observed that plaintiffs are similarly situated when they suffer from "a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). The *O'Brien* Court explained, that "[s]howing a 'unified policy' of violations is not required" to support certification of a collective action. *Id.* Plaintiffs can meet the similarly situated requirement if they demonstrate that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

In determining whether to grant conditional certification, the Court considers: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a "widespread" discriminatory plan affecting those plaintiffs, which was maintained by the defendants. *E.g.*, *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015); *Schwab v. Bernard*, No. 5:11CV1216, 2012 WL 1067074, at *2 (N.D. Ohio Mar. 28, 2012); *Mehmedi v. La Dolce Vita Bistro, LLC*, 1: 10CV 1591, 2010 WL 4789579, at *1 (N.D. Ohio Nov. 17, 2010).

---

*Williams v. Le Chaperon Rouge*, No. 1:07-CV-829, 2007 WL 2344738, at *3 (N.D. Ohio Aug. 14, 2007) (citation omitted); *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010).

Although some courts have concluded that standard in Rule 56(e) applies to affidavits submitted in support of a motion for conditional certification, *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862 (S.D.Ohio 2005); *Richards v. Computer Scis. Corp.*, No. 3-03-CV-00630, 2004 WL 2211691, at *1 (D.Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2004 WL 1675925, at *10 (D.Or.2004); *Clark v. Dollar Gen. Corp.*, No. 3:00-0729, 2001 WL 878887, at *2 (M.D.Tenn. May 23, 2001), other courts have found that affidavits submitted in support of a§ 216(b) motion need not meet the standard set forth in Rule 56(e) and may, for example, contain inadmissible hearsay. *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *6 (N.D. Ohio July 7, 2017); *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 275 (N.D. Cal. 2015). As in *Beetler*, this Court favors the latter view, as "to require more at this stage of litigation would defeat the purpose of the two-stage analysis." *Beetler v. Trans-Foam, Inc.*, No. 5:11CV132, 2011 WL 6130805, at *2 (N.D. Ohio Dec. 8, 2011) (quoting *White*, 236 F.R.D. at 368); *see also Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759 (N.D. Ohio 2015) (holding that heightened "modest plus" standard of review did not apply to motion for conditional certification of collective action under the FLSA, where there had been no joint discovery on the issue of conditional certification, plaintiffs' motion was filed before any discovery had taken place, and plaintiffs had yet to conduct any discovery).

In addition, "[a] court can conditionally certify a collective action under the FLSA on the strength of a single affidavit or declaration if that document sets forth sufficient facts from which the court may reasonably infer the existence of other employees who were subject to the same wage and work hours policy as plaintiff." *Pop v. Permco, Inc.*, No. 5:19-CV-00659, 2019 WL 4154480, at *4-5 (N.D. Ohio Sept. 3, 2019) (slip copy) (quoting *Rembert v. A Plus Home Health Care Agency, LLC*, No. 2:17-CV-287, 2018 WL 2015844, at *2 (S.D. Ohio May 1, 2018)).

Due to the lenient standard at the conditional certification stage, a court does not resolve factual disputes or make credibility determinations at this stage. *Snide v. Discount Drug Mart, Inc.,* 2011 WL 5434016, *4 (N.D.Ohio). Conditional certification orders are not appealable. *Id.*

at 549.

### B. Plaintiff Met His Lenient Burden for Conditional Certification

Based upon the information provided in the Plaintiff's sworn declaration, the job postings, the company policy documents, and Defendants' admissions, Plaintiff seeks to conditionally certify a class of "Assistant General Managers and other similarly-situated employees, such as exempt Restaurant Managers (collectively, "AGMs")." ECF Dkt. #18 at 11. Defendants argue that Plaintiff's supporting documents do not fulfill the lenient standard of proof required at the conditional certification stage. ECF Dkt. #25. Defendants challenge Plaintiff's lack of personal knowledge about other AGMs' and RMs' experiences and claims that Plaintiff failed to make a "modest factual showing" that he is similarly situated to the putative collective members. *Id.*

Defendants' challenge focuses on the third non-exhaustive factor that courts may consider in determining whether employees are similarly situated in order to obtain conditional certification, which is whether there is evidence of a widespread discriminatory plan affecting the potential plaintiffs that was maintained by Defendants. ECF Dkt. #25 at 14-26. Defendants aver that Plaintiff's Declaration, the job postings, and the employment documents do not demonstrate a "widespread" plan to require AGMs and RMs to perform non-exempt (customer service) job duties instead of exempt (management) job duties. *Id.* at 15-26.

Both parties cite to *O'Brien*: Plaintiff states that "AGMs are subject to a single policy that violates the FLSA and are similarly situated," while Defendants contend that "classifying employees as exempt is not itself a 'FLSA-violating policy,' and 'proof of that [classification]' does not 'prove[] a violation of the FLSA as to all' putative class members." ECF Dkt. #29 at 8 (Plaintiff's Reply); #32 at 5 (Defendant's Sur-Reply); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). The Sixth Circuit stated that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. However, that court also made clear that it did "not purport to create a comprehensive criteria for informing the similarly-situated analysis." *Id.* Defendants

7

assert that Plaintiff must produce evidence to show that the putative class members suffer from a single FLSA-violating policy. ECF Dkt. #32 at 5. However, the *O'Brien* court explicitly stated that "[s]howing a 'unified policy' of violations is not required." 575 F.3d at 584. Instead, that court " held that employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien*, 575 F.3d at 584-85) (original emphasis).

In the instant case (and prior to discovery), Plaintiff alleges Defendants violated the FLSA under a theory of misclassification of AGMs and RMs as exempt from the FLSA overtime pay requirements. Courts have recognized this type of claim as being appropriate for conditional certification. *See, e.g.*, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-48 (6th Cir. 2006) (granting conditional certification in case brought by salaried assistant store managers alleging that defendant misclassified them as exempt under FLSA); *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-0022, 2014 WL 842948, at *5-6 (S.D. Ohio Mar. 4, 2014) (granting conditional certification of FLSA collective of loan officers whom plaintiffs asserted were misclassified and denied overtime compensation); *Cox v. Healthcare Servs. Grp., Inc.*, No. 3:13 CV 293, 2013 WL 2443785, at *4 (N.D. Ohio June 4, 2013) (granting conditional certification of FLSA collective of account managers and managers in training who allegedly were misclassified as exempt).

Defendants also rely heavily on *Tyler v. Taco Bell Corp.*, No. 215CV02084JPMCGC, 2016 WL 3162145 (W.D. Tenn. June 3, 2016), which involved identical allegations as the instant case of misclassifying AGMs as exempt under the FLSA. The *Tyler* court refused to conditionally certify the action because the plaintiff had no personal knowledge of the duties and responsibilities of any other AGM, the company documents reflected that AGMs were properly classified as exempt[5] employees, and the plaintiff's declaration failed to state facts showing she

---

[5]The *Tyler* court stated, "Taco Bell's corporate documents reflect that AGMs were properly classified as *non-exempt* employees...." 2016 WL 3162145, at *4 (emphasis added). This appears to be a typographical error as the court otherwise appears to have endorsed the position that the plaintiff was properly classified as *exempt* from FLSA requirements. *Id.* at *3.

8

may have been misclassified. *Id.* at *4. Plaintiff distinguished this case, noting that the parties in *Tyler* engaged in some discovery, although the *Tyler* court nevertheless applied the "modest factual showing" standard and not the "modest plus" standard normally associated with cases where discovery already took place. *Id.*; ECF Dkt. #29 at 16; #32 at 8-9.

Unlike *Tyler*, Plaintiff's declaration provided personal observations of his own experience at three locations, his observations of at least one other AGM who had similar work experiences as Plaintiff, his observations of company policy at play, and statements about the AGM position generally from his District Manager ("DM"). Specifically, Plaintiff stated that he worked at the Claremont location for approximately 2 months and at the Freeway location for approximately 5 months, and he would occasionally be assigned to work as another location in Wooster, Ohio to pick up food or make deliveries. ECF Dkt. #19-2 ¶¶2-4. He also regularly spent about 85% (and sometimes even 90-95%) of his time as an AGM performing manual and customer service tasks, tasks which are typically classified as non-exempt under the FLSA. *Id.* at ¶¶8-9. He worked, on average, over 50 hours a week and was told by his DM, Cristina Rice, that everyone in a salaried position worked a minimum of 50 hours per week. *Id.* at ¶6. He also observed another AGM at the Wooster location working over 50 hours per week and performing the same mix of duties that he performed, including a large amount of hourly work. *Id.* at ¶¶6, 21. Plaintiff observed that the operations at the two locations were similar and that his job duties were also similar, even under the supervision of different GMs. *Id.* at ¶¶22-23. Plaintiff stated that, to his knowledge, AGMs were not required to undergo any additional training when they transfer from one location to another because when he was transitions, he performed the same duties and was not given additional training. *Id.* at ¶24. At the very least, Plaintiff' declaration supports his theory that he has personal knowledge that other AGMs at the three locations where he worked and AGMs at the five or six restaurants that DM Rice oversaw are similarly situated to him. *E.g.* ECF Dkt. #32 at 3 (noting that DM Rice oversaw five or six restaurants operated by Wenco Wooster, Inc.); *see also Rembert v. A Plus Home Health Care Agency LLC*, No. 2:17-CV-287, 2018 WL 2015844, at *2 (S.D. Ohio May 1, 2018) (finding that plaintiff's own experience, observations and direct communications with one of her employers constituted

9

having "personal knowledge" to sufficiently allege the collective members are similarly situated).

Plaintiff's declaration also supports the theory that Defendants had a common policy and operation at all of its locations and that AGMs at such locations generally had the same or similar job duties. His declaration is complemented by the company documents (ECF Dkt. #s 19-3 through 19-8) and job postings (ECF Dkt. #19-1) that Plaintiff provided as well as Defendants' own admissions that it had employed the same overtime compensation policies, practices, and procedures to Plaintiff and other AGMs. ECF Dkt. #12 (Ans.) ¶¶ 7, 35, 40, 51; *see generally Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011) (granting conditional certification in FLSA action, in part, because (1) all proposed members were subject to the same employment classification that plaintiffs alleged violated the FLSA, (2) defendant admitted that it classified mortgage loan officers as exempt from FLSA's overtime requirements, and (3) based on the exempt classification, none of the proposed members were paid overtime).

While each of Plaintiff's supporting exhibits, alone, may be too weak to grant conditional certification, the totality of the evidence supports authorizing conditional certification.

The court finds Plaintiff's arguments to be both logical and persuasive:

> Any argument by Wenco Wendy's that the Court must undertake a person-by-person analysis is undermined by Defendants' uniform classification of AGMs as exempt and its admission that it applies the same policies and procedures to them. There is no indication that Wenco Wendy's found it necessary to perform a person-by-person examination of each AGM's job duties to make individual exemption determinations. *See* Ex. B (Adams Decl.) ¶ 5 (treated as exempt at all the restaurants where he worked as an AGM). It would be contradictory for Wenco Wendy's to uniformly classify all its AGMs as exempt employees, admit it applies the same policies and procedures to all its AGMs, and yet argue that Plaintiff cannot proceed collectively to challenge their exempt classification. *See, e.g.*, *Ravenell v. Avis Budget Rental, LLC*, No. 08 Civ. 2113, 2010 WL 2921508, at *5 (E.D.N.Y. July 19, 2010) (employer's argument that claims cannot be assessed collectively is "inconsistent with [its] blanket policy broadly classifying all shift managers as exempt"); *[Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008)] (same); *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (finding it "disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption").

ECF Dkt. #18 at 22-23.

Finally, while both parties discuss particular aspects of Plaintiff's and putative members' job duties, the Court finds this argument is somewhat premature. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (declining to address merits issues because "[a]t the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues."). Although this case centers on whether Defendants properly classified Plaintiff (and other AGMs and RMs) as exempt from FLSA's overtime compensation requirement, the issue at this stage is whether Plaintiff has shown that his position is similar to other putative class members. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006). Plaintiff appears primarily to have provided the job postings to show general uniformity in the AGM position across its locations and, consequently, to show that Plaintiff and other AGMs are similarly situated for conditional certification purposes. ECF Dkt. #18 at 22-25. Whether or not Plaintiff(s) actually qualify as exempt or non-exempt under the FLSA is the ultimate issue in this case and will center on the details of the AGM and RM job duties.

### C.     Plaintiff's Proposed Notice of Suit

Courts may facilitate FLSA collective actions by authorizing notice of the suit to potential plaintiffs. *Hoffmann–La Roche, Inc., v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 170. Thus, the Court will supervise notice so to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

Defendants maintain that, in the event of conditional certification, the Court should revise Plaintiff's proposed Notice of Suit. ECF Dkt. #25 at 26-30. Defendants request that the Court revise the Notice to correct the statute of limitation period for opt-in plaintiffs, to more narrowly define the class, to limit the op-in period to 45 days rather than the proposed 90 days, and to eliminate the need for a Reminder Notice. *Id.*

### 1. Statute of Limitations

The FLSA permits an action to be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A willful violation exists when an employer knew or recklessly disregarded the fact that its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988).

Both parties agree that the Notice of Suit should include a three year period for potential opt in plaintiffs. ECF Dkt. #18 at 17-18; #25 at 28; #29 at 22-23. Defendant maintains that the Notice should be limited to the three years prior to the date this Court approves the Notice, and not the date the complaint was filed. ECF Dkt. #25 at 28. Plaintiff also noted that "FLSA statute of limitations runs until an employee files a consent form," such that time was of the essence. ECF Dkt. #18 at 17. However, in his reply, Plaintiff maintained that the collective start date should be tied to the date the complaint was filed. ECF Dkt. #29 at 22-23.

By statute, the limitations period for an opt-in plaintiff continues to run until the plaintiff files a written consent to join the action. 29 U.S.C. § 256(b). However, courts in this Circuit have mixed results in determining when the statute of limitations begins to run for opt-in plaintiffs. *Compare Roberts v. J.R. Eng'g, Inc.*, No. 5:19-CV-00110, 2019 WL 5653340, at *9 (N.D. Ohio Oct. 31, 2019) (slip copy) (finding that conditional certification should count back from the date of the court's order, not the filing of Plaintiff's suit, where plaintiff did not dispute defendant's assertion that certification should be based on the date of approval of the notice, not the filing of the lawsuit); *Crescenzo v. O-Tex Pumping, LLC*, No. 15-CV-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016) ("Courts in the Sixth Circuit have found that class certification is appropriately limited to three years prior to the date of approval of the notice, and not the filing of the lawsuit.") (citing *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015)); *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 895 (S.D. Ohio 2004) (finding that purposes of determining timeliness of claims, former employee's action on FLSA claims commenced on date he filed consent form to be joined in

12

putative class action); *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (S.D. Ohio 2019) (noting that "[f]or FLSA collective actions, filing the complaint does not toll the statute of limitations; [r]ather, the statute of limitations continues to run on each individual claim until each opt-in plaintiff files his or her consent to join the action.") (citing 29 U.S.C. § 256); *with Adams v. MedPlans Partners, Inc.*, No. 3:07CV259, 2007 WL 4291303, at *2 (W.D. Ky. Dec. 5, 2007) (concluding that "Notice shall be sent only to those claims examiners who were employed by MedPlans since May 21, 2004, or three years prior to the filing of this action. This order does not resolve the matter of the statute of limitations, and the Court recognizes that notice may be served to some putative plaintiffs for whom the statute has already run."); *Larson v. Rush Fitness Corp.*, No. 3:12-CV-109, 2013 WL 5350640, at *6 (E.D. Tenn. Sept. 23, 2013) (authorizing notice to potential plaintiffs who were employed "during the three years preceding the filing of the Complaint" because "it is a better practice to calculate the scope of the class from the date of the filing of the complaint, because at [the first stage of collective action certification] the Court is not determining what potential plaintiffs will be successful."); *Byerly v. Robin Indus., Inc.*, No. 1:19-CV-1004, 2019 WL 4256390, at *4 (N.D. Ohio Sept. 9, 2019) (authorizing proposed notice for a statute of limitations period accruing from three years preceding the date the complaint was filed).

In light of the foregoing, the Court finds that the statute of limitations continues to run for an opt-in plaintiff until the opt-in plaintiff files a written consent to join the action. The Court orders that the Notice of Suit be limited to the three years prior to the date the complaint was filed, which is July 8, 2016, to the present. However, in so ruling, the Court is not determining whether such potential plaintiffs who may receive Notice of the suit have successfully opted in within the applicable statute of limitations period.

### 2. **Class Definition**

Next, Defendants aver that the class definition is overly broad. Plaintiff's proposed Notice defines the class as follows:

> If you worked as an Assistant General Manager or salaried Restaurant Manager between July 8, 2016 and the present, a collective action lawsuit may affect your rights.

13

ECF Dkt. #19-9. Defendant proposes to narrow the definition to specify that the putative class members consists of those current and former AGMs and RMs who were misclassified as exempt and who worked over 40 hours in one or more workweeks. ECF Dkt. #25 at 27.

The Court agrees with Defendant's revisions except for the language pertaining to a legal conclusion ("who were misclassified as exempt employees"). ECF Dkt. #25-19. The Court finds that the class definition should be amended to define the class as:

> All Assistant General Managers or salaried Restaurant Managers who worked for Wenco Wendy's between July 8, 2016 and the present and who were not paid one-and-a-half times their regular rate of pay for all hours worked in excess of 40 hours in one or more workweeks.

*See Perry v. Krieger Beard Servs., LLC*, No. 3:17-CV-161, 2018 WL 3218413, at *3 (S.D. Ohio July 2, 2018) (finding plaintiffs did not propose an impermissible fail-safe class definition where they defined "the class to include all technicians who worked for Krieger Beard and were not paid one-and-a-half times their regular rate of pay for all hours worked in excess of 40 per workweek and/or the minimum wage for each hour worked."); *Roberts v. J.R. Eng'g, Inc.*, No. 5:19-CV-00110, 2019 WL 5653340, at **1, 9-10 (N.D. Ohio Oct. 31, 2019) (slip copy) (narrowing definition of proposed class to the following: "All former and current non-exempt manufacturing employees of J.R. Engineering, Inc. in Barberton, Ohio and Norton, Ohio between October 31, 2016 and the present who performed unpaid pre-shift and/or post-shift work."); *see generally Feustel v. Careerstaff Unlimited, Inc.*, No. 1:14-CV-264, 2015 WL 13021897, at *2 (S.D. Ohio Mar. 25, 2015) (noting that "the Sixth Circuit has recognized that 'a class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits.' ") (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)).

### 3. **Opt-In Period**

Defendants further object to the length of the proposed opt-in period of ninety (90) days. ECF Dkt. #25 at 28. Defendants request the notice period to be shortened to forty-five (45) days. *Id.* This Court and others have shortened the opt-in period to forty-five days because it is more efficient. *See Beetler v. Trans-Foam, Inc.*, No. 5:11CV132, 2011 WL 6130805, at *5 (N.D. Ohio

Dec. 8, 2011) (Limbert, M.J.) (finding that a forty-five days opt-in period, rather than the proposed ninety-day period, satisfied the need to prevent delay in the litigation while also allowing potential plaintiffs time to fully consider their options); *Snide v. Disc. Drug Mart, Inc.*, No. 1:11CV0244, 2011 WL 5434016, at *8 (N.D. Ohio Oct. 7, 2011)*, report and recommendation adopted*, No. 1:11-CV-00244, 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011) (shortening opt-in period to forty-five days) (citing *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011); *Baden-Winterwood v. Life Time Fitness*, No. 2:06 CV 99, 2006 WL 2225825, at *3 (S.D. Ohio Aug. 2, 2006) (noting that "sixty (60) days is too long and would needlessly delay the litigation")).

However, Courts have also recognized that an opt-in period longer than forty-five days is appropriate when there is high turnover in the industry. *See Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017) (finding that "90-day notice periods are also common in FLSA lawsuits, and the difficulty that Plaintiffs' counsel may have in locating former employees of Defendant [in telephone customer service industry], even of a single location, weighs in favor of a longer notice period."); *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *7 (S.D. Ohio July 11, 2017) (approving 90-day opt-in period where plaintiff and putative class were employees of industry with high turnover rate, namely in-home healthcare services) (citations omitted) (class later decertified, 2018 WL 6069095 (S.D. Ohio Nov. 19, 2018)); *see also Perez v. A+ Bldg. Maint. & Home Repair, LLC*, No. 3:17CV01261, 2018 WL 2002420, at *8 (N.D. Ohio Apr. 30, 2018) (permitted uncontested opt-in period not to exceed ninety days where plaintiffs were general labor/service technicians). The Court agrees with Plaintiff that the fast food industry experiences high turnover rates. ECF Dkt. #29 at 23 (citing *Pickney v. Strategic Restaurants Acquisition Co. LLC*, No. 6:16-CV-00211, 2018 WL 2399454, at *2 (W.D. La. May 9, 2018), *report and recommendation adopted*, No. CV 16-0211, 2018 WL 2376665 (W.D. La. May 24, 2018) (noting that "employee turnover in the fast food industry is notoriously high"); *Hernandez-Martinez v. Chipotle Mexican Grill, Inc.*, No. 11 C 4990, 2012 WL 2721913, at *7 (N.D. Ill. July 9, 2012) (same).

As one court in this Circuit succinctly stated: "There is no hard and fast rule controlling the length of FLSA notice periods. Courts in [the Southern District of Ohio] have frequently used their discretion to grant ninety-day opt-in periods." *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio 2018) (collecting cases) (permitting 60-day opt-in period where neither party cited any particular circumstances that would render one proposal more favorable than the other and the court opined that an additional fifteen days would not needlessly delay litigation). Since Plaintiff has provided sufficient support and the Court finds no evidence of an otherwise impermissible or unnecessary delay in litigation, the Court grants Plaintiff's request for a 90-day opt-in period.

### **4.** **Reminder Notice**

Plaintiff's proposed notice method includes a reminder notice (ECF Dkt. #19-10) to be sent to collective members halfway through the notice period via regular U.S. mail. ECF Dkt. #29 at 24. Defendants oppose a reminder notice altogether but did not specifically challenge the substance of the reminder notice if it were approved. ECF Dkt. #25 at 29. Courts in the Sixth Circuit have wide discretion in approving reminder notices. *Compare Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016) ("[T]he Court should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims."); *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (approving 90-day notice period but prohibiting a reminder notice); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *8 (N.D. Ohio July 7, 2017) (approving dual form of initial notice via mail and email but denying request for a reminder notice); *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio 2018) (approving 90-day notice period and dual form of notice but denying plaintiff's request to send a reminder notice) *with Godsey v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 502550, at *5 (S.D. Ohio Jan. 31, 2020) (allowing plaintiffs to send a reminder notice halfway through the 90-day opt-in period); *Westley v. CCK Pizza Co., LLC*, No. 18-13627, 2019 WL 2355597, at *5 (E.D. Mich. June 4, 2019) (same); *Elmy v. W. Express, Inc.*, No. 3:17-CV-01199, 2019 WL 6715115, at *3 (M.D. Tenn. Dec. 10, 2019) (authorizing

reminder notice); *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017) (same); *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2016 WL 11501744, at *3 (S.D. Ohio Sept. 6, 2016) (approving reminder notice because it "promotes the broad remedial purpose of the FLSA"). The Court approves Plaintiff's request to send a reminder notice halfway through the opt-in period to all potential plaintiffs of the conditionally certified class that have not opted in to the litigation at the time the reminder notice is sent.

### III. CONCLUSION

In conclusion, the Court GRANTS Plaintiff's motion for conditional certification of the proposed Collective to the extent described in this Opinion and Order. "This is a conditional certification subject to later review after completion of significant discovery. Later review may include Court action to either expand or limit the certification as appropriate." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006).

The Court ORDERS that the Notice of Suit be limited to the three years prior to the filing of the complaint, July 8, 2016, to the present. The Court also GRANTS Plaintiff's request for a 90-day opt-in period and for a reminder notice to be sent halfway through the opt-in period. The Court further ORDERS Plaintiff to revised the Proposed Notice form to reflect the modified terms described herein. Specifically, the class definition should be amended to define the class as:

> All Assistant General Managers or salaried Restaurant Managers who worked for Wenco Wendy's between July 8, 2016 and the present and who were not paid one-and-a-half times their regular rate of pay for all hours worked in excess of 40 hours in one or more workweeks.

Defendants request other minor revisions to the proposed Notice (ECF Dkt. #25-19) that Plaintiff opposes. *See* ECF Dkt. #25 at 29; #29 at 25. Since these revisions consist primarily of typographical changes, the Court ORDERS the parties to confer and submit a joint proposed Notice by 11:59 PM EST within fourteen (14) calendar days of this memorandum opinion and order for Court approval.

The Court approves of Plaintiff's Consent to Join form (ECF Dkt. #19-9 at 6-7) and Reminder Notice (ECF Dkt. #19-10), as written. Defendants did not contest the substance of

17

such forms and the Court finds no error within them.

In addition, the Court ORDERS Defendants to produce to Plaintiff, by 11:59 PM EST within fourteen (14) days from the date of this Opinion and Order, a computer-readable list of the known names, last known mailing addresses, last known telephone numbers, last known personal and work email addresses, last four digits of Social Security numbers (for notice that are returned undeliverable), and work locations for all Collective Members.

IT IS SO ORDERED.

DATE: May 22, 2020             */s/ George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE