**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **JASON ADAMS, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **No. 19 Civ. 01544 (CEH)** |
| **v.** | **Hon. Carmen E. Henderson** |
| **WENCO ASHLAND, INC., WENCO AKRON LLC, WENCO INDIANA LLC, WENCO MANAGEMENT LLC, and WENCO WOOSTER, INC. d/b/a WENCO WENDY'S,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT, SERVICE
<u>AWARD, AND ATTORNEYS' FEES AND COSTS</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 1

    I.    Factual Allegations ........................................................................ 1

    II.    Overview of Investigation, Litigation, and Settlement Negotiations .................... 2

SUMMARY OF KEY SETTLEMENT TERMS ........................................................... 4

    I.    The Settlement Fund ..................................................................... 4

    II.    Eligible Employees ....................................................................... 5

    III.    Distribution Procedure ................................................................. 5

    IV.    Release ........................................................................................ 5

    V.    Allocation Formula ...................................................................... 6

    VI.    Service Award .............................................................................. 6

    VII.    Settlement Administration ............................................................ 6

    VIII.    Attorneys' Fees and Litigation Costs .......................................... 7

ARGUMENT ............................................................................................................. 7

    I.    A One-Step Approval Process Is Standard for FLSA Settlements. ...................... 7

    II.    Approval of the Parties' Negotiated Settlement Agreement Is Appropriate. ......... 8

        A.    The Settlement Agreement Is a Compromise of a Bona Fide Dispute, Eliminating the Risk of Fraud or Collusion (Factor 1). ............................. 8

        B.    Further Litigation Would Be Lengthy, Complex, and Costly (Factor 2).... 9

        C.    The Parties Engaged in Sufficient Discovery (Factor 3). ......................... 10

        D.    Named Plaintiff and Collective Members Could Face Risks in Further Litigation (Factor 4). ................................................................................. 11

        E.    The Support of Plaintiffs' Counsel and Named Plaintiff Favors Approval (Factor 5)................................................................................. 12

        F.    The Reaction of Absent Class Members Is Not Applicable (Factor 6). ... 13

G.      Approval Is in the Public Interest (Factor 7). ........................................... 13

III.    The Service Award Should Be Approved as Fair and Reasonable...................... 13

IV.     The Proposed Notice Should Be Approved. ........................................................ 15

V.      Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable........... 16

        A.      Named Plaintiff's Request for Attorneys' Fees Is Reasonable................ 16

        B.      Plaintiffs' Counsel Are Entitled to Reimbursement of Costs. .................. 19

CONCLUSION....................................................................................................................... 20

**TABLE OF AUTHORITIES**

**CASES**                                                                     **PAGE(S)**

*Arp v. Hohla & Wyss Enters., LLC*,
   No. 18 Civ. 119, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ............................... 18

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 10

*Bailey v. AK Steel Corp.*,
   No. 06 Civ. 468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ............................... 19

*Bassett v. Tenn. Valley Auth.*,
   No. 09 Civ. 39, 2010 WL 3092251 (W.D. Ky. Aug. 5, 2010) ................................. 15

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 18

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................................... 16, 17

*Bradford v. Legacy Health Servs.*,
   No. 13 Civ. 218, 2014 WL 7185453 (N.D. Ohio Dec. 16, 2014) .............................. 7

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
   No. 16 Civ. 516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) ............................. 15

*Bredbenner v. Liberty Travel, Inc.*,
   Nos. 09 Civ. 905, 09 Civ. 1248, 09 Civ. 4587, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...... 15

*Buechler v. DavCo Rests., Inc.*,
   No. 09 Civ. 227, 2009 WL 3833999 (D. Md. Nov. 16, 2009) ................................. 12

*Crawford v. Lexington-Fayette Urban Cty. Gov't*,
   No. 06 Civ. 299, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) .................................. 8

*Creely v. HCR ManorCare, Inc.*,
   920 F. Supp. 2d 846 (N.D. Ohio 2013) ................................................................... 11

*Daoust v. Maru Rest., LLC*,
   No. 17 Civ. 13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) .......................... 16

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................... 19

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ................................................................................................. 16

iv

*Dillow v. Home Care Network*,
   No. 16 Civ. 612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) .......................................... 14, 15

*Dillworth v. Case Farms Processing, Inc.*,
   No. 05 Civ. 1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................................................. 8

*Edwards v. City of Mansfield*,
   No. 15 Civ. 959, 2016 WL 2853619 (N.D. Ohio May 16, 2016) .............................................. 7

*Espenscheid v. DirectSat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) ..................................................................................................... 14

*Evans v. Black Lagoon Prods., LLC*,
   No. 16 Civ. 34, 2017 WL 11494680 (E.D. Tenn. Oct. 25, 2017) .............................................. 9

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) ................................................................................................ 16, 17

*Ford Motor Co. v. Mustangs Unlimited, Inc.*,
   487 F.3d 465 (6th Cir. 2007) ..................................................................................................... 13

*Fox v. Express Courier Int'l, Inc.*,
   No. 09 Civ. 2401, 2010 WL 11493934 (W.D. Tenn. Oct. 5, 2010) ........................................... 9

*Francis v. RTB Holdings, LLC*,
   No. 18 Civ. 44, 2019 WL 7173736 (E.D. Tenn. Dec. 7, 2019) ................................................. 9

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   678 F. Supp. 2d 89 (E.D.N.Y. 2010) ........................................................................................ 15

*Gascho v. Glob. Fitness Holdings, LLC*,
   No. 11 Civ. 436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ................................................ 19

*Geier v. Sundquist*,
   372 F.3d 784 (6th Cir. 2004) ..................................................................................................... 17

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ....................................................................................................................... 7

*Gentrup v. Renovo Servs., LLC*,
   No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011) .............................................. 18

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ..................................................................................................... 14

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ................................................................................................................... 15

*Kritzer v. Safelite Sols., LLC*,
   No. 10 Civ. 729, 2012 WL 1945144 (S.D. Ohio May 30, 2012)..............................................8

*Lockhart v. D&S Residential Servs., LP*,
   No. 18 Civ. 2586, 2020 WL 4717910 (W.D. Tenn. Aug. 13, 2020) ........................................11

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010)..................................................................................14

*Ne. Ohio Coal. for the Homeless v. Husted*,
   831 F.3d 686 (6th Cir. 2016) ...................................................................................................16

*Northcross v. Bd. of Educ. of Memphis City, Schs.*,
   611 F.2d 624 (6th Cir. 1979) ...................................................................................................20

*Osman v. Grube, Inc.*,
   No. 16 Civ. 802, 2018 WL 2095172 (N.D. Ohio May 4, 2018)....................................7, 18, 19

*Paxton v. Bluegreen Vacations Unlimited*,
   No. 16 Civ. 523, 2019 WL 2067224 (E.D. Tenn. May 9, 2019) ..............................................7

*Perry v. Krieger Beard, Servs., LLC*,
   No. 17 Civ. 161, 2021 WL 247927 (S.D. Ohio Jan. 26, 2021)...............................................18

*Posner v. Showroom, Inc.*,
   762 F.2d 1010 (6th Cir.1985) ..........................................................................................16, 17

*Price v. Acosta, Inc.*,
   No. 03 Civ. 2686, 2008 WL 11320260 (W.D. Tenn. Feb. 19, 2008) .....................................11

*Pritchard v. Dent Wizard Int'l Corp.*,
   210 F.R.D. 591 (S.D. Ohio 2002)............................................................................................7

*Redington v. Goodyear Tire & Rubber Co.*,
   No. 07 Civ. 1999, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008) ..........................................8

*Renfro v. Ind. Mich. Power Co.*,
   No. 99 Civ. 877, 2007 WL 710138 (W.D. Mich. Mar. 6, 2007) ............................................20

*Robinson v. Shelby Cty. Bd. of Educ.*,
   566 F.3d 642 (6th Cir. 2009) ...................................................................................................13

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
   No. 09 Civ. 1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010)......................................9, 13

*Salinas v. U.S. Xpress Enters., Inc.*,
   No. 13 Civ. 245, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018)............................................14

*Schneider v. Goodyear Tire & Rubber Co.*,
   No. 13 Civ. 2741, 2014 WL 2579637 (N.D. Ohio June 9, 2014) .......................................... 7, 8

*Simmons v. Mathis Tire & Auto Serv., Inc.*,
   No. 13 Civ. 2875, 2015 WL 5008220 (W.D. Tenn. Aug. 20, 2015) ...................................... 8, 9

*Smith v. Serv. Master Corp.*,
   592 Fed. App'x 363 (6th Cir. 2014) ........................................................................................ 16

*Swigart v. Fifth Third Bank*,
   No. 11 Civ. 88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................. 8

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................................... 10

*UAW v. Gen. Motors Corp.*,
   No. 05 Civ. 73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ......................................... 10

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v.
G & M Roofing & Sheet Metal Co.*,
   732 F.2d 495 (6th Cir.1984) ................................................................................................... 16

*Waggoner v. U.S. Bancorp*,
   No. 14 Civ. 1626, 2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) .......................................... 15

*West v. Emeritus Corp.*,
   No. 15 Civ. 437, 2017 WL 2880394 (M.D. Tenn. July 5, 2017) ......................................... 8, 17

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
   No. 08 WP 65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ......................................... 19

*Williams v. Bevill*,
   No. 14 Civ. 82, 2016 WL 773230 (E.D. Tenn. Feb. 8, 2016) ................................................. 18

*Wright v. Premier Courier, Inc.*,
   Nos. 16 Civ. 420, 17 Civ. 654, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018)...................... 10

**STATUTES**

29 U.S.C. § 216(b) .......................................................................................................................... 16

## INTRODUCTION

Named Plaintiff Jason Adams ("Named Plaintiff") and Defendants Wenco Ashland, Inc.,

Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc.

(collectively, "Wenco Wendy's" or "Defendants") have agreed, subject to Court approval, to

resolve this lawsuit on behalf of Named Plaintiff and collective members who have opted into

the lawsuit for significant monetary relief.  The settlement should be approved because it

resolves a bona-fide dispute, was the result of arm's-length negotiations between experienced

counsel assisted by a private mediator, and provides excellent value to the workers it will benefit.

Named Plaintiff respectfully requests that the Court: (1) approve the settlement set forth

in the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit

1 to the Declaration of Molly Brooks ("Brooks Decl.")[1]; (2) approve the proposed Notice of

Settlement ("Notice") (attached as Exhibit A to the Settlement Agreement) and direct its

distribution; (3) approve Service Award to Named Plaintiff for his service to the collective; (4)

approve Named Plaintiff's request for attorneys' fees and reimbursement of costs and expenses;

and (5) incorporate the terms of the Settlement Agreement and dismiss the lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Wenco Wendy's operates approximately 64 franchise locations of the Wendy's restaurant

chain.  ECF No. 36 (First Am. Compl. ("FAC")) ¶ 4.  Named Plaintiff worked as an exempt-

classified Assistant General Manager ("AGM") from approximately June 2018 to December

2018.  Id. ¶ 16.  Named Plaintiff alleges that Wenco Wendy's violated the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by improperly classifying him and other AGMs as

---

[1]      Unless otherwise indicated, all exhibits are attached to Brooks Declaration, and all capitalized terms have
the definitions set forth in the Settlement Agreement.

exempt from federal overtime requirements and failing to pay them overtime wages.  FAC ¶¶ 2, 59.  Named Plaintiff also alleges parallel claims on behalf of Ohio AGMs under Ohio Revised Code §§ 4111.01 *et seq.* (the "Ohio Wage Laws").  *Id.* ¶¶ 3, 115.

## II.  Overview of Investigation, Litigation, and Settlement Negotiations

Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple AGMs.  Brooks Decl. ¶ 11.  Plaintiffs' Counsel focused their investigation and legal research on the merits of potential collective action members' claims, their damages, and the propriety of collective action certification.  *Id.*

On February 19, 2019, Named Plaintiff contacted Defendants to invite them to explore pre-litigation resolution of AGMs' claims.  *Id.* ¶ 12.  Although the parties had some initial conversations about settlement, Wenco Wendy's did not agree to an agreement to toll the statute of limitations while the parties continued to engage in pre-suit negotiations.  *Id.* ¶ 13.  Accordingly, in order to preserve his claims and those of the prospective collective, Named Plaintiff filed a Class and Collective Action Complaint on July 8, 2019.  ECF No. 1.

In a renewed effort to reach a settlement and prior to the filing of Named Plaintiff's motion for collective certification, the parties agreed to attempt to resolve the case through private mediation.  Brooks Decl. ¶ 14.  The parties engaged Bradley Sherman, an experienced mediator in employment and wage and hour law, to mediate this matter on November 18, 2019 in Cleveland, Ohio.  *Id.* ¶¶ 14, 16.  In preparation for mediation, Wenco Wendy's produced personnel data to allow Named Plaintiff to calculate potential damages.  *Id.* ¶ 15.  Plaintiffs' Counsel analyzed these data and constructed a damages model.  *Id.*  The parties prepared detailed mediation briefs setting forth their respective positions as to liability and damages.  *Id.*

After a full day mediation, the parties were unable to reach an agreement but nonetheless continued to discuss settlement over the next several weeks.  *Id.* ¶ 16.

Despite the parties' best efforts to resolve the matter, they were unable to reach a settlement.  *Id.*  To preserve the collective's claims, Named Plaintiff filed Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("216(b) Motion") on January 31, 2020.  ECF Nos. 18-19 (216(b) Motion).  While the 216(b) Motion was pending, Magistrate Judge Limbert held a preliminary pretrial conference on February 12, 2020 and entered a Preliminary Pretrial Order that same day.  ECF No. 23.  The 216(b) Motion was extensively briefed by the parties; in addition to Defendants' opposition, ECF No. 25, and Named Plaintiff's reply, ECF No. 29, Defendants filed a surreply, ECF. No. 32, and Named Plaintiff filed a sur-surreply, ECF No. 34.  On May 22, 2020, the Court granted Named Plaintiff's 216(b) motion.  ECF No. 39 (Order Certifying Collective Action).

The opt-in period closed on September 29, 2020.  Id. ¶ 19.  Forty-one collective members joined the lawsuit.  *Id.*  On August 5, 2020, the parties attended a remote initial conference before this Court to appraise the Court of the case's status.  Following the conference, the Court ordered the parties to submit a joint discovery plan following the close of the Notice Period (September 29, 2020).  Accordingly, the parties met and conferred on October 7, 2020 and submitted a joint discovery plan which was approved on the same day.  ECF No. 69.

Throughout the litigation, and especially following the close of the notice period, the parties have engaged in robust discovery.  Following the preliminary pretrial conference held by Magistrate Judge Limbert, parties served initial disclosures.  Brooks Decl. ¶ 20.  The parties negotiated and filed a protective order on October 26, 2020.  ECF No. 68.  Named Plaintiff served discovery requests and interrogatories in late February and continued to confer with Defendants in managing document production in light of the challenges presented by the

3

pandemic. *Id.* Defendants served discovery requests and interrogatories to Named Plaintiff in April 2020 and Named Plaintiff collected and produced all relevant documents in June 2020. *Id.* Over the course of several months the parties engaged in extensive discussions regarding relevant search terms for the production of electronically stored information ("ESI") responsive to Named Plaintiff's requests. *Id.* ¶ 21. In light of the significant undertaking involved in discovery and Named Plaintiff's plans to imminently notice the depositions of corporate representatives, Named Plaintiff again invited Defendants to engage in settlement discussions. *Id.* ¶ 23. Defendants agreed, and the parties engaged a mediator. *Id.*

In advance of the second mediation, Defendants produced updated data to Named Plaintiff to allow the parties to calculate potential damages based on the current collective. *Id.* ¶ 24. The parties drafted mediation briefs setting forth their respective positions as to liability and damages. *Id.* On November 20, 2020, the parties conducted a remote, full-day mediation with Michael Ungar, a well-regarded mediator who is experienced in employment law class and collective actions. *Id.* ¶ 25. In the weeks following mediation, the parties reached an agreement in principle on the terms of the settlement, which were memorialized in a formal Term Sheet on December 17, 2020. *Id.* Over the next several weeks, the parties finalized the terms of the settlement and executed the Settlement Agreement on February 25, 2021. *Id.* ¶ 26.

## SUMMARY OF KEY SETTLEMENT TERMS

### I.     The Settlement Fund

The Agreement establishes a Monetary Payment Amount of $150,000.00, from which individual Settlement Awards will be paid to collective members who timely opted into this action ("Eligible Collective Members" and hereinafter, along with Named Plaintiff, "Plaintiffs"). Ex. 1 (Settlement Agreement) ¶¶ 1.1, 3.1(i). The Monetary Payment Amount also covers any Court-approved Service Award, as described further below. *Id.*

## II.    Eligible Employees

Eligible Collective Members include all AGMs who joined this litigation and have not withdrawn their consent to join forms.  *Id.* ¶ 1.16.

## III.    Distribution Procedure

Within seven days of the Effective Date (*i.e.*, the later of 31 days following the Court's Order Granting Approval of the Settlement if no appeal is taken of such Order, or the Court's entry of a final order and judgment after any and all appeals are resolved), Wenco Wendy's will provide the Settlement Administrator with a list, in electronic form, of all Plaintiffs' names, Last Known Addresses, Social Security numbers, and the dates of employment as AGMs during the Relevant Period.  *Id.* ¶ 2.7.  Within 21 days of the Effective Date, the Settlement Administrator will mail notice of the settlement and settlement checks to all Plaintiffs.  *Id.* ¶ 2.8.  The proposed Notice will inform Plaintiffs of the nature of the dispute, the terms of the settlement, their individual settlement payment, and the release.  Ex. A (Notice) to Ex. 1 (Settlement Agreement).

If any Notices are returned as undeliverable, the Settlement Administrator will take all reasonable steps to obtain the correct address for any Plaintiff, including using Social Security numbers to obtain better address information, and shall attempt re-mailings.  Ex. 1 (Settlement Agreement) ¶ 2.9.  If no forwarding address is provided, the Settlement Administrator will perform skip traces to obtain the most recent addresses and re-mail the Notice to them.  *Id.*

Plaintiffs will have 120 days to negotiate their settlement check.  *Id.* ¶ 3.4(iv).  Any Settlement Checks not cashed within that period shall become void and revert to Defendants.  *Id.*

## IV.    Release

Plaintiffs will release any and all state and federal overtime claims that were, or could have been, alleged based on the factual allegations in this lawsuit that accrued prior to the date the Settlement Agreement is executed.  *Id.* ¶ 4.1.

## V.     Allocation Formula

Plaintiffs' individual Settlement Amounts will be calculated pursuant to an agreed-upon allocation formula based primarily on the number of weeks that each Plaintiff worked during the relevant period.  *Id.* ¶ 3.4(i).  Each Plaintiff shall be assigned one point for each week in which he or she was employed as an AGM during the relevant period.  *Id.*  The Settlement Administrator will add all points for all Plaintiffs together to obtain the Denominator.  *Id.*  The Settlement Administrator will then divide the number of points for each Plaintiff by the Denominator to obtain each Plaintiff's Total Percentage Share of the Net Monetary Payment.  *Id.* Finally, the Settlement Administrator will multiply each Plaintiff's Total Percentage Share of Net Monetary Payment by the Net Monetary Payment Fund to determine each Plaintiff's individual Settlement Amount.  *Id.*  For tax purposes, 50% of each Plaintiff's individual Settlement Amount will be deemed back wages and 50% will be treated as liquidated damages, interest, any applicable penalties, and other non-wage relief.  *Id.* ¶ 3.4(v)(A).

## VI.     Service Award

The Agreement provides that, subject to Court approval, Named Plaintiff will receive a $8,000.00 service award, in recognition of the assistance he rendered in obtaining the benefits of the settlement for the collective, as well as the risks he took to do so, and in consideration of executing a general release.  *Id.* ¶ 3.3.

## VII.     Settlement Administration

The parties have retained Analytics LLC, a third-party claims administrator, to serve as the Settlement Administrator.  *Id.* ¶ 1.23.  Analytics LLC's fee will be paid by Defendants, not from the Monetary Payment Amount.  Ex. 1 (Settlement Agreement) ¶ 3.1(ii).

## VIII.  Attorneys' Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiffs' Counsel will receive $150,000.00 as attorneys' fees and costs.  *Id.* ¶ 3.1(iii).

### ARGUMENT

## I.  A One-Step Approval Process Is Standard for FLSA Settlements.

In the Sixth Circuit a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include Rule 23 classes.[2]  This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions.  *Cf. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA . . . .").  Unlike Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt in to be bound by any judgment.  *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002).

Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements.  Where, as here, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for an opt-out mechanism or objections.[3]

---

[2]        *See, e.g.*, *Ratcliffe v. Food Lion LLC*, No. 18 Civ. 1177, slip op. at 3 (M.D. Tenn. Oct. 15, 2020); *Paxton v. Bluegreen Vacations Unlimited*, No. 16 Civ. 523, 2019 WL 2067224, at *1 (E.D. Tenn. May 9, 2019); *Johnson v. Platinum Corral LLC*, No. 17 Civ. 399, slip op. at 2 (S.D. Ohio Apr. 13, 2018); *Schriver v. Golden Corral Corp.*, No. 17 Civ. 136, slip op. at 2 (N.D. Ohio May 31, 2018); *Edwards v. City of Mansfield*, No. 15 Civ. 959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Bradford v. Legacy Health Servs.*, No. 13 Civ. 218, 2014 WL 7185453, at *2 (N.D. Ohio Dec. 16, 2014); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014).

[3]        *See Osman v. Grube, Inc.*, No. 16 Civ. 802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ("Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions.").

## II.  Approval of the Parties' Negotiated Settlement Agreement Is Appropriate.

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes.[4]  When evaluating a settlement, courts consider "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *West*, 2017 WL 2880394, at *1 (quoting *Crawford*, 2008 WL 4724499, at *3).  Because the Court "may choose to consider only those factors that are relevant to the settlement at hand," certain factors, such as the reaction of absent class members, are irrelevant in an FLSA settlement for only individuals who opted in.  *Id*. (quoting *Redington v. Goodyear Tire & Rubber Co.*, No. 07 Civ. 1999, 2008 WL 3981461, at *11 (N.D. Ohio Aug. 22, 2008)).

The settlement in this case easily meets the standard for approval.  The settlement is the result of extensive investigation, contested litigation, exchange of formal and informal discovery, and extensive arm's-length negotiations between experienced counsel assisted by two private mediators.  Brooks Decl. ¶¶ 14-16, 24-26; *see Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *2-3, *8 (S.D. Ohio July 11, 2014).

### A.  The Settlement Agreement Is a Compromise of a Bona Fide Dispute, Eliminating the Risk of Fraud or Collusion (Factor 1).

The litigation in this case easily meets the standard of a bona fide dispute.  "[C]ourts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness

---

[4]        *See, e.g.*, *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13 Civ. 2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015); *Schneider*, 2014 WL 2579637, at *2-3; *Kritzer v. Safelite Sols., LLC*, No. 10 Civ. 729, 2012 WL 1945144, at *5, *10 (S.D. Ohio May 30, 2012); *Dillworth v. Case Farms Processing, Inc.*, No. 05 Civ. 1694, 2010 WL 776933, at *5-6 (N.D. Ohio Mar. 8, 2010).  "If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to promote the policy of encouraging settlement of litigation."  *West v. Emeritus Corp.*, No. 15 Civ. 437, 2017 WL 2880394, at *2 (M.D. Tenn. July 5, 2017) (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, *2 (E.D. Ky. Oct. 23, 2008)).

of the settlement." *Fox v. Express Courier Int'l, Inc.*, No. 09 Civ. 2401, 2010 WL 11493934, at *1 (W.D. Tenn. Oct. 5, 2010); *accord Simmons*, 2015 WL 5008220, at *1; *see also Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09 Civ. 1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010).  Throughout the contested litigation, the parties disputed the nature of AGMs' job duties and Defendants' classification of them was proper and willful.  Brooks Decl. ¶ 28.  The parties also disputed the number of overtime hours AGMs worked and whether the fluctuating workweek method of calculating overtime wages should apply.  *Id.*; *see Francis v. RTB Holdings, LLC*, No. 18 Civ. 44, 2019 WL 7173736, at *1 (E.D. Tenn. Dec. 7, 2019) (finding a "bona fide dispute" when the parties disputed "FLSA coverage and the amount of back pay").

The settlement was the result of extensive pre-suit investigation, discovery, and substantial arms'-length negotiations.  Brooks Decl. ¶¶ 11-26.  Recognizing the uncertain legal and factual issues involved, the parties reached the settlement after private mediation before an experienced mediator and through subsequent negotiations.  *Id.* ¶ 25; *see Francis*, 2019 WL 7173736, at *1 (approving settlement where negotiations were "held at arms' length and with the parties being represented by experienced and reputable counsel"); *Evans v. Black Lagoon Prods., LLC*, No. 16 Civ. 34, 2017 WL 11494680, at *1 (E.D. Tenn. Oct. 25, 2017) ("The negotiations that resulted in settlement were held at arms' length with the parties being represented by experienced and reputable counsel."); *Simmons*, 2015 WL 5008220, at *1 (finding that the "complexity of the issues presented in this matter, the volume of discovery already completed, and the parties' good faith participation in mediation with an experienced wage and hour mediator" weighed in favor of approving settlement).

### B.    Further Litigation Would Be Lengthy, Complex, and Costly (Factor 2).

By reaching a favorable settlement prior to dispositive motions, decertification, or trial, Named Plaintiff seeks to avoid significant expense, risk, and delay, and instead ensure a recovery

for Eligible Collective Members.  "[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).  This collective and putative class action is no exception.

Further litigation would cause additional expense and delay.  Named Plaintiff would need to engage in extensive additional fact discovery to establish liability, damages, and that collective certification was appropriate.  The parties would also expect voluminous briefing if either party files a motion for decertification or summary judgment and, if the Court determines factual disputes bar summary judgment, the case would go to trial – a time- and resource-intensive endeavor.  Even after trial or summary judgment, either party might appeal.  This settlement, however, provides significant immediate relief to Plaintiffs, which is particularly valuable given the current economic crisis.  Therefore, this factor weighs in favor of approval.

### C.  The Parties Engaged in Sufficient Discovery (Factor 3).

In evaluating this factor, courts must consider whether "the parties and the court have adequate information in order to evaluate [their] relative positions," and "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."  *Wright v. Premier Courier, Inc.*, Nos. 16 Civ. 420, 17 Civ. 654, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018) (quoting *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)).

This was a heavily litigated case.  The parties engaged in substantial written discovery. They first negotiated a robust ESI plan and spent months conferring regarding relevant search terms relating to Defendants' electronic databases, and in order to facilitate the exchange of information, they filed a protective order with the Court on October 26, 2020, ECF No. 68.

Brooks Decl. ¶ 21. The parties engaged in full written discovery of Named Plaintiff and production by Wenco of hundreds of pages of documents. *Id.* ¶ 20-21. Named Plaintiff also expended significant time in preparation for the deposition of Wenco Wendy's 30(b)(6) witness and AGMs who had submitted declarations in support of Defendants' opposition to Named Plaintiff's 216(b) Motion – which all was set to occur in short order following the close of the Notice Period – when the parties agreed to re-engage in settlement discussions. *Id.* ¶ 22. Plaintiffs' Counsel obtained detailed information from several AGMs through extensive interviews with them in connection with its initial investigation of the matter. *Id.* ¶ 11.

Accordingly, Plaintiffs' Counsel has reviewed a wealth of information that allows for the responsible resolution of this matter. Therefore, this factor weighs in favor of approval.

### D. Named Plaintiff and Collective Members Could Face Risks in Further Litigation (Factor 4).

Although Named Plaintiff believes his case is strong, it is subject to considerable risk. First, there is a risk that Named Plaintiff would not succeed in maintaining a collective through trial. Although Named Plaintiff and Plaintiffs' Counsel believe the weight of the evidence would show that Named Plaintiff and other AGMs were similarly situated and could withstand any attempts at decertification, Defendants would likely argue that the differences among various stores and other individualized questions would warrant decertification of a collective. Although Named Plaintiff disagrees, employers have prevailed on such arguments. *See, e.g.*, *Lockhart v. D&S Residential Servs., LP*, No. 18 Civ. 2586, 2020 WL 4717910, at *9 (W.D. Tenn. Aug. 13, 2020) ("Plaintiff presents evidence of potential FLSA violations but fails to demonstrate that each of the Opt-Ins shared a common FLSA injury."); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 856 (N.D. Ohio 2013) (factual variations and individualized defenses favored decertification); *Price v. Acosta*, *Inc.*, No. 03 Civ. 2686, 2008 WL 11320260, at *2-3 (W.D. Tenn. Feb. 19, 2008) (differing "factual and employment settings" favored decertification).

Second, a trial on the merits would involve significant risks for Named Plaintiff as to both liability and damages.  The status of AGMs under the FLSA is contextual with facts pointing in both directions, and some cases supporting Defendants' position that restaurant managers are exempt employees.  *See e.g.*, *Buechler v. DavCo Rests., Inc.*, No. 09 Civ. 227, 2009 WL 3833999 (D. Md. Nov. 16, 2009) (summary judgment granted to another Wendy's fast-food restaurant franchise regarding alleged misclassification of AGMs).  Although Named Plaintiff believes *Buechler* and other cases are distinguishable, and that he could establish Defendants' liability, this would require significant factual development.

Third, a trial on the merits would involve significant risks as to damages.  Named Plaintiff would have to prove willfulness in order to obtain a third year of liability for damages and establish that Plaintiffs each worked over 40 hours a week to recover their unpaid overtime.

### E.  The Support of Plaintiffs' Counsel and Named Plaintiff Favors Approval (Factor 5).

That Plaintiffs' Counsel recommend approval of the settlement supports approval.  The settlement amount is reasonable in light of the considerable risk that Plaintiffs face.  The Monetary Payment Amount represents a substantial percentage of Plaintiffs' lost wages.  Brooks Decl. ¶ 29.  The Monetary Payment Amount represents a net per-workweek amount averaging approximately $121.00 for each Eligible Work Week worked by Plaintiffs.[5]  *Id*.  Put differently, Plaintiffs are receiving their overtime payments at a time-and-a-half rate for 4.7 hours of overtime per week.[6]  *Id*.  This is an excellent result given the risks of litigation and proving damages.[7]  *Supra* Section II.D.  This outcome fairly compromises the claims in the lawsuit for

---

[5]  This figure was reached by dividing the Net Monetary Payment ($150,000.00 less Plaintiff Jason Adams' Service Award or $142,000.00) by the total number of workweeks for all Plaintiffs for the relevant period (1,169).

[6]  This figure was reached by dividing the per-workweek amount ($121.00) by the estimated overtime rate ($26.03), which was obtained by multiplying Plaintiffs' average hourly rate of $17.35 by 1.5).

[7]  In particular, although discovery supported that Plaintiffs worked approximately 50-55 hours, ECF No. 18-

unpaid overtime.  By Plaintiffs' Counsel's estimation, this is a substantial percentage of Plaintiffs' lost wages.  Brooks Decl. ¶ 29.

The proposed allocation of the settlement is also reasonable.  It reflects a proportion of damages owed to Plaintiffs based on the number of weeks they worked for Defendants, which is a reasonable approximation of their damages.  Ex. 1 (Agreement) ¶ 3.4(i); *see, e.g.*, *Rotuna*, 2010 WL 2490989, at *6 (approving allocation based on weeks worked).

### F.    The Reaction of Absent Class Members Is Not Applicable (Factor 6).

Because the settlement encompasses only collective members who opted in to the litigation, the impact on absent class members is not applicable.

### G.    Approval Is in the Public Interest (Factor 7).

The public interest supports approval.  The established policy in this circuit favors resolution of litigation through settlement.  *See Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (noting that it is "well-established that '[p]ublic policy strongly favors settlement of disputes without litigation'" (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007))).  The settlement is favorable and provides compensation to over dozens of fast food workers, at a time when they are facing economic strain as a result of the pandemic.  The settlement also conserves judicial resources by avoiding protracted litigation.

### III.   The Service Award Should Be Approved as Fair and Reasonable.

Named Plaintiff requests approval of a $8,000.00 Service Award.  Ex. 1 (Settlement Agreement) ¶ 3.3(i).  The Service Award recognizes the time and effort Named Plaintiff expended in furtherance of the litigation and settlement, including initiating the lawsuit and informing counsel of the facts initially, providing information and documents to counsel,

---

19 (216(b) Motion) at 3, Defendants vigorously disputed that Plaintiffs worked overtime.  Brooks Decl. ¶ 28. Further, in Plaintiffs' Counsel's experience defendants often argue that a fluctuating workweek calculation, as opposed to a time-and-a-half, is the appropriate manner of assessing damages.

submitting a declaration, conferring with counsel about the lawsuit, and assisting with the
mediation and damages analyses.  Brooks Decl. ¶ 32.

Courts in the Sixth Circuit recognize that in common fund cases and where the settlement
agreement provides for service awards, plaintiffs who have contributed to the litigation deserve
compensation in addition to their settlement share.  *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th
Cir. 2003) ("[I]ncentive awards are efficacious ways of encouraging members of a class to
become class representatives and rewarding individual efforts taken on behalf of the class."); *see
also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (approving
$5,000 incentive awards and noting incentive awards are typical in Sixth Circuit), *on
reconsideration in part* (July 21, 2010).  Courts also recognize the need for enhancement awards
to encourage litigants to bring collective actions, furthering the public policy underlying the
statutory scheme.  *Dillow v. Home Care Network*, No. 16 Civ. 612, 2018 WL 4776977, at *8
(S.D. Ohio Oct. 3, 2018) (approving a service award because, in part, "Plaintiff's efforts
furthered the important public policies underlying the Fair Labor Standards Act").

Named Plaintiff undertook substantial financial, reputational and personal risks.  First,
Named Plaintiff agreed to bring the action in his name, to be deposed, and to testify if there was
a trial.  Brooks Decl. ¶ 33.  In so doing, he assumed significant risk that "should the suit fail, he
[could] find himself liable for the defendant's costs or even, if the suit [was] held to have been
frivolous, for the defendant's attorneys' fees."  *Espenscheid v. DirectSat USA, LLC*, 688 F.3d
872, 876 (7th Cir. 2012).  In addition, although Named Plaintiff was no longer employed by
Defendants when he initiated the lawsuit, by associating his name with the case, he merits
recognition for risking retaliation from future employers for the benefit of all collective
members.  *See Salinas v. U.S. Xpress Enters., Inc.*, No. 13 Civ. 245, 2018 WL 1477127, at *10
(E.D. Tenn. Mar. 8, 2018) ("By bringing suit against a large company and having documents

publicly filed with his name on them, named plaintiffs whoa [sic] assist in class action litigation .
. . 'risk their good will and job security in the industry for the benefit of the class as a whole.'"
(quoting *Bredbenner v. Liberty Travel, Inc.*, Nos. 09 Civ. 905, 09 Civ. 1248, 09 Civ. 4587, 2011
WL 1344745 (D.N.J. Apr. 8, 2011))); *Brandenburg v. Cousin Vinny's Pizza*, *LLC*, No. 16 Civ.
516, 2019 WL 6310376, at *7 (S.D. Ohio Nov. 25, 2019) ("A worker who advocates for his or
her colleagues assumes substantial risk, including the risk that a prospective employer may be
hesitant to hire an employee who sued a past employer. Given that employers can find such
information through a simple internet search, this risk is very real.").

The proposed Service Award is well within the range of awards that courts within this
circuit regularly and routinely grant under these circumstances.[8]

## IV.    The Proposed Notice Should Be Approved.

The Court should also approve the proposed settlement Notice. *See* Ex. A (Notice) to Ex.
1 (Settlement Agreement).  The proposed Notice informs Plaintiffs of the terms of the Settlement
Agreement, including the allocation formula, how Plaintiffs may participate, the individual
Settlement Amount to which they are entitled, the scope of the release, and the request for
attorneys' fees and costs.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).
The proposed Notice here provides "'accurate and timely notice concerning the pendency of the
collective action' so that each individual has the opportunity to make an informed decision
regarding whether to opt-in to the settlement." *Bassett v. Tenn. Valley Auth*., No. 09 Civ. 39,
2010 WL 3092251, at *2 (W.D. Ky. Aug. 5, 2010) (quoting *Garcia v. Pancho Villa's of
Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010)).

---

[8]      *See, e.g.*, *Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29,
2016) (approving service awards of $10,000 each for the named plaintiffs and discovery opt-in plaintiffs); *Dillow*,
2018 WL 4776977, at *8 (approving a "modest" service of award of $8,500 for named plaintiff in wage and hour
case).

**V.      Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

Plaintiffs' Counsel is entitled to recover their fees and costs expended in litigating this FLSA collective action.  Where relatively small claims can only be realistically prosecuted through aggregate litigation, and the law relies on prosecution by "private attorney[s] general," attorneys who fill that role must be adequately compensated for their efforts.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("[A]n award of attorney fees [in FLSA cases] 'encourage[s] the vindication of congressionally identified policies and rights.'" (quoting *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 503 (6th Cir.1984))).  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."  *Daoust v. Maru Rest., LLC*, No. 17 Civ. 13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019).

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action."  29 U.S.C. § 216(b).  An award of attorneys' fees under § 216(b) is mandatory if plaintiffs prevail.  *Smith v. Serv. Master Corp.*, 592 Fed. App'x 363, 367 (6th Cir. 2014).

Because Plaintiffs' Counsel's efforts have rendered a significant benefit to Collective Members, Plaintiffs' Counsel requests that the Court grant their request of $150,000.00 in attorneys' fees and costs, as provided in paragraph 3.2 of the Settlement Agreement.

**A.      Named Plaintiff's Request for Attorneys' Fees Is Reasonable.**

When courts consider attorneys' fees requests in FLSA cases, there is a strong presumption that the lodestar, which is calculated by multiplying reasonable hourly rates by the number of hours reasonably expended on the litigation, is reasonable.  *See Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).  Indeed, the Sixth Circuit has "upheld substantial awards of attorney's fees even though a

16

plaintiff recovered only nominal damages." *Fegley*, 19 F.3d at 1135 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, at *2 (6th Cir.1985)); *see also West*, 2017 WL 2880394, at *2 (finding attorneys' fee and cost award that exceeded plaintiff's recovery was "not unreasonable," especially "considering the relative lack of correlation between plaintiffs' recoveries and attorney's fees in FLSA cases" (citing *Fegley*, 19 F. 3d at 1135)).

Here, Named Plaintiff's request for attorneys' fees is *less than one-third* of Plaintiffs' Counsel's actual lodestar incurred in litigating and settling this matter.  Brooks Decl. ¶ 37; Declaration of Nicole Fiorelli ("Fiorelli Decl. ¶ 9); Ex. 1 (Settlement Agreement) ¶ 3.2. Plaintiffs' Counsel's lodestar is calculated by multiplying the reasonable number of hours worked (which were contemporaneously recorded) by the actual current hourly rate of each attorney.   Brooks Decl. ¶ 37; Fiorelli Decl. ¶ 10.  Plaintiffs' Counsel has spent approximately 920 attorney, paralegal, and support staff hours prosecuting and negotiating the settlement of this case.  Brooks Decl. ¶ 37; Fiorelli Decl. ¶ 9.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar of $453,104.00.[9]  Brooks Decl. ¶ 37.

The hourly rates Plaintiffs' Counsel used in calculating their fees are reasonable and appropriate, are the rates they typically charge, and are consistent with prevailing rates in the geographic areas in which they practice.  Brooks Decl. ¶ 39; Fiorelli Decl. ¶ 7; *see Blum*, 465 U.S. at 895 & n.11 (rates must be consistent with the prevailing rates in the relevant geographic area for "lawyers of reasonably comparable skill, experience and reputation"); *see also Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  Courts regularly approve Plaintiffs' Counsel's rates and Plaintiffs' Counsel's hourly clients regularly accept and pay these hourly rates, or higher.  Brooks Decl. ¶¶ 39-40; Fiorelli Decl. ¶ 8.

---

[9]      This figure is current through February 8, 2021.  As noted below, Plaintiffs' Counsel expect to continue working on this case, causing the expended fees to rise.  Plaintiffs' Counsel are prepared to submit detailed time records showing the underlying time entries, by timekeeper, upon the Court's request.

Moreover, courts in this circuit have approved comparable rates in wage and hour cases, which are recognized as being complex in nature.[10]  *See, e.g.*, *Perry v. Krieger Beard, Servs., LLC*, No. 17 Civ. 161, 2021 WL 247927, at *4 (S.D. Ohio Jan. 26, 2021) ("Courts within the Sixth Circuit have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions such as this."), *report and recommendation adopted*, 2021 WL 632812 (S.D. Ohio Feb. 18, 2021); *Arp v. Hohla & Wyss Enters., LLC*, No. 18 Civ. 119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (approving of hourly attorney rates ranging from $350 to $600, and "$100 to $150 for support staff and law clerk time," with an "average hourly rate of $445"); *see also Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011); *Osman*, 2018 WL 2095172, at *5 (finding that the complexity of the case weighed in favor of the attorneys' fee award because "[t]he litigation involved multiple restaurants spread across different states with hundreds of potential witnesses").

Plaintiffs' Counsel requested fee award is reasonable where they request less than their actual lodestar.[11]  *See Williams v. Bevill*, No. 14 Civ. 82, 2016 WL 773230, at *3 (E.D. Tenn. Feb. 8, 2016) (finding counsel's reduction in fees weighed in favor of approval), *report and recommendation adopted*, No. 14 Civ. 82, 2016 WL 792417 (E.D. Tenn. Feb. 29, 2016). Further, that this lodestar figure does not account for the additional time Plaintiffs' Counsel will expend on this case going forward in connection with implementing and monitoring the settlement renders it "even more reasonable."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013).  Plaintiffs' Counsel's extensive experience litigating multi-plaintiff wage-and-hour actions and their efficient litigation and settlement of this case also supports the

---

[10]      Plaintiffs' Counsel's average hourly rate (calculated by dividing lodestar by hours spent) is approximately $492.50.

[11]      Even if the Court were to discount Plaintiffs' Counsel's average hourly rate to $250, the adjusted lodestar (approximately $230,000) would be more than the requested fee award here.

reasonableness of the requested fee award.  Brooks Decl. ¶¶ 5-10; Fiorelli Decl. ¶ 6.  Plaintiffs'

Counsel's efforts to date have been without compensation, and any payment has been contingent

upon achieving a good result.  Brooks Decl. ¶¶ 36, 41; *see Osman*, 2018 WL 2095172, at *5

(fees reasonable where "Plaintiffs' Counsel took the case on a contingency basis").

The requested fee is all the more reasonable in light of the high level of success achieved

in this case.  Named Plaintiff prevailed on his motion for collective action notification pursuant

to 29 U.S.C. § 216(b) and obtained a substantial settlement.

Finally, because the attorneys' fees were negotiated after reaching agreement on the

substantive terms of the Monetary Payment Amount, Brooks Decl. ¶ 31, they are entitled to a

"presumption of reasonableness."[12]  *In re: Whirlpool Corp. Front-loading Washer Prod. Liab.*

*Litig.*, No. 08 WP 65000, 2016 WL 5338012, at *10 (N.D. Ohio Sept. 23, 2016) ("no indicia . . .

of fraud or collusion" where attorneys' fees were separately negotiated); *Gascho v. Glob. Fitness*

*Holdings, LLC*, No. 11 Civ. 436, 2014 WL 1350509, at *25 (S.D. Ohio Apr. 4, 2014)

("[S]eparate negotiations suggest a lower risk of collusion where, as here, relief to the class is

fair, reasonable, and adequate."), *report and recommendation adopted*, No. 11 Civ. 436, 2014

WL 3543819 (S.D. Ohio July 16, 2014).  "[C]ourts are especially amenable to awarding

negotiated attorneys['] fees and expenses in a reasonable amount where that amount is in

addition to and separate from the defendant's settlement with the class."  *Bailey v. AK Steel*

*Corp.*, No. 06 Civ. 468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) (quoting *DeHoyos v.*

*Allstate Corp.*, 240 F.R.D. 269, 322-23 (W.D. Tex. 2007)).

### B.    Plaintiffs' Counsel Are Entitled to Reimbursement of Costs.

While Plaintiffs' Counsel are not separately seeking costs in addition to the $150,000.00

---

[12]    In addition, the parties agree that the request for attorneys' fees and costs is to be considered separately from the Court's consideration of the Settlement.  Ex. 1 (Settlement Agreement) ¶ 3.2(ii).

award, Plaintiffs' Counsel have incurred $16,231.79 in out-of-pocket expenses.  Brooks Decl. ¶¶ 43-44; Fiorelli Decl. ¶ 11.  The award sought is also intended to compensate Plaintiffs' Counsel for those expenses, which further supports the reasonableness of the award when costs are considered in addition to Plaintiffs' Counsel's lodestar.  As is the case with Plaintiffs' Counsel's attorneys' fees, this shall be paid by Defendants and will not be paid from the Monetary Payment Amount.  Ex. 1 (Settlement Agreement) ¶ 3.2.

An award of a "reasonable attorneys' fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to a fee-paying client.  *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979) (applying 42 U.S.C. § 1988).  "Where attorneys' fees are expressly authorized by statute, . . . the court . . . is authorized to include litigation expenses as part of a reasonable attorneys' fee." *Renfro v. Ind. Mich. Power Co.*, No. 99 Civ. 877, 2007 WL 710138, at *1 (W.D. Mich. Mar. 6, 2007), *overruled on other grounds*, 497 F.3d 573 (6th Cir. 2007).

Plaintiff's Counsel's actual expenses of $16,231.79 were necessary to the representation of Plaintiffs.  Brooks Decl. ¶ 45; Fiorelli Decl. ¶ 11.  These include court fees, mediation fees, postage, travel expenses, working meals, photocopies, and electronic research.  *See id.*

## CONCLUSION

For the reasons set forth above, Named Plaintiff respectfully requests that the Court issue an order: (1) approving the settlement set forth in the Agreement; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving the Service Award to the Named Plaintiff; (4) approving Named Plaintiff's request for attorneys' fees and reimbursement of costs and expenses; (5) approving Analytics LLC as the Settlement Administrator and approving payment of its fees and costs; and (6) incorporating the terms of the Agreement.

Dated:  March 4, 2021

Respectfully submitted,

*/s/ Molly Brooks*
Molly Brooks

**OUTTEN & GOLDEN LLP**
Molly Brooks*
Nina Martinez*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: mb@outtengolden.com
          nmartinez@outtengolden.com

Pooja Shethji*
601 Massachusetts Avenue, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Email: pshethji@outtengolden.com

**DWORKEN & BERNSTEIN CO., L.P.A.**
Nicole Fiorelli (#0079204)
60 South Park Place
Painesville, OH 44077
Telephone: (216) 861-4211
Fax: (440) 352-3469
Email: nfiorelli@dworkenlaw.com

*Attorneys for Plaintiff and the Collective*

* Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2021, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By: *<u>/s/ Molly Brooks</u>*
Molly Brooks