# EXHIBIT 1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Jason Adams (the "Named Plaintiff"), individually and on behalf of the collective of individuals he represents (collectively with Named Plaintiff, "Plaintiffs"), and Defendants Wenco Ashland, Inc., Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc. (collectively "Defendants") (together with Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiff filed *Adams v. Wenco Ashland, Inc. et al*, No. 19 Civ. 1544 (N.D. Ohio), a Class and Collective Action Complaint asserting claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Ohio wage and hour laws for the alleged failure to pay overtime compensation to Plaintiffs (the "Litigation," "Lawsuit," or "Action");

**WHEREAS**, the purpose of this Agreement is to settle the claims asserted in the Litigation, relating to the non-payment of overtime to individuals who timely opted into this Action on or before the close of the Notice Period (September 29, 2020) and were employed in the exempt-classified positions of Assistant General Managers (AGMs) and salaried Restaurant Managers (RMs) (collectively, "AGMs") for overtime hours worked between July 8, 2016 and September 29, 2020.

**WHEREAS**, Defendants deny all allegations made by the Named Plaintiff in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, the Parties agreed in November 2020 to engage in discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation;

**WHEREAS**, on November 20, 2020, the Parties participated in a full-day mediation session of this matter which was conducted by experienced mediator, Michael Ungar, and subsequently executed a term sheet on December 17, 2020, reaching an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with the Named Plaintiff and other AGMs, engaged in discovery and obtained and reviewed documents relating to Defendants' compensation policies and practices, and analyzed payroll data. Based upon this analysis and evaluation of a number of factors, and recognizing that the substantial risks of continued litigation, including the possibility of decertification, might not result in any recovery or might result in a recovery less favorable and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the Plaintiffs' best interests.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to settle the Litigation on the following terms and conditions.

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the settlement between them, and which is subject to Court approval.

1.2 "Approval Motion" means the Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement filed by Plaintiffs seeking, among other things, approval from the Court of the Settlement.

1.3 "Assistant General Managers" or "AGMs" mean any employee of Defendants who held the position of salaried Assistant General Manager or salaried Restaurant Manager (however variously titled) at any time between July 8, 2016 and September 29, 2020.

1.4 "Complaint" means the First Amended Class and Collective Action Complaint, dated April 10, 2020.

1.5 "Court" means the United States District Court for the Northern District of Ohio.

1.6 "Defendants" means Wenco Ashland, Inc., Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc.

1.7 "Defendants' Counsel" means Hahn Loeser & Parks LLP.

1.8 "Effective Date" means the later of thirty-one (31) days after: (i) the date of the Court's Order Granting Approval of the Agreement if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any appeals are resolved.

1.9 "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.10 "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for a Plaintiff as shown in Defendants' records.

1.11 "Monetary Payment Amount" means One Hundred and Fifty Thousand Dollars ($150,000.00), which is the maximum amount that Defendants have jointly and severally agreed to pay to Plaintiffs and for any Court-approved service award.  Defendants shall pay Employer Payroll Taxes separately and in addition to the Monetary Payment Amount. Other than this Employer Payroll Taxes obligation, Defendants will not be required to pay any more than the gross total of One Hundred and Fifty Thousand Dollars ($150,000.00) for Plaintiffs' state and federal overtime claims and any Court-approved service award.

**1.12**    "Named Plaintiff" means Jason Adams.

**1.13**    "Net Monetary Payment Fund" means the means the remainder of the Monetary Payment Amount after deductions/payments for the Court-approved service award to the Service Award Recipient.

**1.14**    "Order Granting Approval of Settlement" or "Approval Order" means an order entered by the Court, which gives final approval to the Settlement and this Agreement and enters final judgment.

**1.15**    "Parties" collectively means the Plaintiffs and Defendants.

**1.16**    "Plaintiffs" means the Named Plaintiff and the collective members who timely opted into this Action on or before the close of the Notice Period (September 29, 2020) and held the position of AGM at any time between July 8, 2016 and September 29, 2020.

**1.17**    "Plaintiffs' Counsel" means Outten & Golden LLP and Dworken & Bernstein Co., L.P.A.

**1.18**    "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Monetary Payment Amount paid by Defendants.  The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s).  Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.19**    "Releasees" means Defendants and their respective current and former officers, directors, managers, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities.

**1.20**    "Relevant Period" means the time period between July 8, 2016 and September 29, 2020[1].

**1.21**    "Reminder Postcard" means the notification sent sixty (60) days following the mailing of the Settlement Notice and Settlement Check to all Plaintiffs who have not yet negotiated their Settlement Check, reminding them to return a negotiate their Settlement Check prior to the close of the Check Negotiation Period if they wish to participate in the Settlement.

**1.22**    "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.23**    "Settlement Administrator" means Analytics LLC.

**1.24**    "Settlement Amount" or "Settlement Amounts" means each Plaintiff's proportionate share of the Net Monetary Payment Fund calculated in accordance with this Agreement.

---

[1] All time periods provided by this Agreement are stated in calendar days, not business days, unless otherwise specifically identified.

**1.25**   "Settlement Check" means the check issued to each Plaintiff for their proportionate share of the Net Monetary Payment Fund calculated in accordance with this Agreement.

**1.26**   "Settlement Notice" means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to Exhibit A attached hereto.

## 2.    APPROVAL AND NOTICE AND PAYMENT TO PLAINTIFFS

**2.1**   This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**   The Settlement Administrator will be selected by Defendants, subject to the approval of Plaintiffs' Counsel.

**2.3**   The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice to Plaintiffs; and preparing and mailing Settlement Checks; distributing approved service award and attorneys' fees and expenses; calculating all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement Amounts to be paid to Plaintiffs; and retaining and providing a copy of Settlement Checks.  Disputed claims will be resolved by the Settlement Administrator.

**2.4**   The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement.  The Settlement Administrator shall provide such information to Plaintiffs or Defendants upon request.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and distribution of the Settlement Checks.

**2.5**   Defendants agree to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Amounts, and assist the Settlement Administrator in locating Plaintiffs.  Defendants' records shall be presumed accurate.

**2.6**   Plaintiffs shall use their best efforts to file the Approval Motion within fourteen (14) days after the execution of this Agreement.  Plaintiffs' Counsel will provide Defendants' Counsel with a draft of the Approval Motion for review and comment at least five (5) days prior to filing it with the Court, and Defendants' Counsel will provide Plaintiffs' Counsel with their comments within three (3) days of receiving the draft Approval Motion.  With the Approval Motion, Plaintiffs' Counsel also will file the Agreement together with the Proposed Approval Order and Settlement Notice, attached hereto as Exhibit A.  Among other things, the Approval Motion will ask the Court to: (i) approve the Settlement as fair, adequate, and reasonable; (ii) approve the proposed Settlement Notice and the plan for its distribution; (iii) incorporate the terms of this Settlement; (iv) enter Judgment dismissing the case without prejudice, to convert, without further action of the Court, to dismissal with prejudice one hundred twenty (120) days after the Effective Date; and (v) retain jurisdiction to enforce the Agreement.

2.7     Within seven (7) days of the Effective Date, Defendants shall give the Settlement Administrator and Plaintiffs' Counsel a list, in electronic form, of all Plaintiffs' names, Last Known Addresses,  social security numbers, and the dates of employment as AGMs during the Relevant Period ("Plaintiffs List").  Plaintiffs' Counsel will then update the contact information in the Plaintiffs List to reflect the information provided by the collective members in the Claim Forms submitted pursuant to collective certification so that the Plaintiffs List is received by the Settlement Administrator within fourteen (14) days of the Effective Date.

2.8     Settlement Notices and Settlement Checks will be mailed together, via First Class United States Mail to Plaintiffs by the Settlement Administrator within twenty-one (21) days of the Effective Date. The Settlement Notice will advise Plaintiffs of the settlement and of their right to participate in the settlement of all of their claims under the Fair Labor Standards Act ("FLSA") and any and all applicable state wage and hour law(s) by endorsing their settlement check, which shall contain a specific release of claims.

2.9     The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Plaintiff for whom the Settlement Notice or Settlement Check, respectively, is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings.  Any Settlement Notices or Settlement Check returned as undeliverable shall require the Settlement Administrator to request an updated mailing address from the Plaintiff by phone and/or e-mail, and shall also be traced up to two (2) times to obtain a new address and be re-mailed to the Plaintiff by First Class United States Mail using the best information available to the Settlement Administrator.

2.10    The Settlement Administrator will also send Reminder Postcards via First Class U.S. Mail sixty (60) days after the initial mailing or, for those Plaintiffs who receive a re-mailing, sixty (60) days after the re-mailing of the Settlement Notice and Settlement Check to any Plaintiff who, at the time of and mailing the Reminder Postcard, has not negotiated their Settlement Check. The Reminder Postcards will advise Plaintiffs of the last date on which they can timely negotiate their Settlement Check and of contact information for the Settlement Administrator.

2.11    In the event that the Court fails to approve this Agreement, the Parties will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement, and resubmit a revised agreement, if possible.  If the Court does not approve a renegotiated agreement, this Agreement and the renegotiated agreement will be void and unenforceable and the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against Plaintiffs or Defendants under Rule 408 of the Federal Rules of Evidence.

## 3.    SETTLEMENT TERMS

**3.1    Settlement Payments.**

  i. Defendants agree to pay the Monetary Payment Amount, which shall fully resolve and satisfy any and all of Plaintiffs' claims and which shall include any Court-approved service award as more fully set forth herein. Defendants shall pay Employer Payroll Taxes for each Plaintiff separate from, and in addition to, this settlement amount.

  ii. Defendants agree to pay up to Fifteen Thousand Dollars ($15,000.00) for costs related to settlement administration and mediation.

  iii. Plaintiffs' Counsel may petition the Court for an award of fees and expenses in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00). Plaintiffs' Counsel acknowledges that such amount includes all fees and costs of all counsel for the Plaintiffs.  Defendants agree not to oppose Plaintiffs' Counsel's application for Attorneys' Fees and Expenses consistent with these limitations.

  iv. Within ten (10) days of the Effective Date, Defendants shall deposit Three Hundred Thousand Dollars ($300,000.00) into the SF.

  v. Within fourteen (14) days of the Effective Date, the Settlement Administrator will distribute the money in the QSF by making the following payments:

    (a) Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

    (b) Paying the Court-approved service award as described in Section 3.3.

  vi. The Settlement Administrator will issue checks to Plaintiffs for their Settlement Amounts, as described in Section 3.4, within twenty-one (21) days of the Effective Date.

  vii. Any and all amounts attributable to Plaintiffs who do not negotiate their checks shall revert to Defendants one hundred twenty (120) days after the Effective Date.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

  i. In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of One Hundred and Fifty Thousand Dollars ($150,000.00) as an award of attorneys' fees and costs. This amount shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree

that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

ii.    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement.  The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.  Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Monetary Payment Fund.

**3.3    Service Award.**

i.    In Plaintiff's Approval Motion, Named Plaintiff will apply to the Court to receive Eight Thousand Dollars ($8,000.00) for himself from the Monetary Payment Amount for the services he rendered to the collective.  Any person for whom the Court approves the payment of a service award is a "Service Award Recipient."

ii.    This service award and any requirements for obtaining such payment is separate and apart from, and in addition to, the Service Award Recipient's recovery from the Net Monetary Payment Fund as a Plaintiff.  The substance of the Named Plaintiff's application for a service award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement.  The outcome of the Court's ruling on the application for a service award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  Any service award money not approved by the Court shall become part of the Net Monetary Payment Fund.

**3.4    Distribution of Payments to Plaintiffs**

i.    Payments to Plaintiffs will be made from the Net Monetary Payment Fund. The estimated Settlement Amount for each Plaintiff will be determined by the Settlement Administrator pursuant to the following formula:

(a)    Each Plaintiff, including the Named Plaintiff, shall be assigned one point for each forty-hour week in which the individual was employed as an AGM during the Relevant Period.

(b)    To calculate each Plaintiff's proportionate Settlement Amount:

1.    Add all points for all Plaintiffs together to obtain the "Denominator";

2.    Divide the number of points for each Plaintiff by the Denominator to obtain each Plaintiffs' "Portion of the Net Monetary Payment Fund";

3.    Multiply each Plaintiff's Portion of the Net Monetary Payment Fund by the Net Monetary Payment Fund to determine each Plaintiff's Settlement Amount.

ii.    The Settlement Administrator's calculations regarding Plaintiffs' Settlement Amounts from the Net Monetary Payment Fund will be final and binding.

iii.    The Settlement Administrator shall use reasonable efforts to make an additional mailing to Plaintiffs whose checks are returned because of incorrect addresses.  Such efforts shall include: (a) obtaining correct addresses as described in Section 2.9; and (b) using social security numbers to obtain better address information.

iv.    Plaintiffs shall have one hundred twenty (120) days following the issuance of Settlement Checks to negotiate their Settlement Checks.  Any Settlement Checks not cashed within that period shall become void and the Settlement Administrator shall issue a "stop payment" thereon.  Any such voided checks shall become a part of the reversion to Defendants.

v.    Defendants' Payroll Tax Responsibility and Tax Characterization of Payments.

(a)    For tax purposes, 50% of the payment to a Plaintiff pursuant to this Agreement shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

(b)    Defendants' share of payroll taxes shall be paid separately and in addition to the Monetary Payment Amount.

(c)    Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as service awards, interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, and the Settlement Administrator shall determine the proper tax reporting form for that amount.  The Settlement Administrator shall be responsible for

determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and service awards, and issuing IRS Forms W-2 and Forms 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(d)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Plaintiff receiving a Settlement Check or service award. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Plaintiffs, the payment of any costs or award of attorneys' fees, or any payments to the Service Award Recipient. The Settlement Notice will advise Plaintiffs to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

## 4.     RELEASE OF CLAIMS

**4.1**     Release by Plaintiffs: Conditioned upon the Court's entry of the Approval Order, and in exchange for monetary consideration paid pursuant to this Agreement, all Plaintiffs release Releasees from: all overtime claims from that accrued during their employment as AGMs from July 8, 2016, and continuing through the Effective Date, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this Litigation. The claims being released are referred to in this Agreement as "Released Claims."

**4.2**     Release by Service Award Recipient: In addition to the Released Claims and effective upon the Court's entry of the Approval Order, the Service Award Recipient waives, releases and discharges Releasees from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment with Defendants, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, FLSA (including but not limited to claims for overtime compensation), Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the Service Award Recipient signs this Agreement; provided, however, that the Service Award Recipient does not waive the right to file a charge or complaint with any

administrative agency but they do waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective action.  Service Award Recipient does not release any claim that cannot be released as a matter of law or rights under this Agreement.

**4.3**   By signing the Agreement, the Service Award Recipient becomes party to the Agreement.

## 5.   MUTUAL COOPERATION

**5.1**   The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 6.   NOTICES

**6.1**   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiff and/or Collective:

Molly Brooks
Nina Martinez
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Email: mb@outtengolden.com
         nmartinez@outtengolden.com

Pooja Shethji
Outten & Golden LLP
601 Massachusetts Avenue, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Email: pshethji@outtengolden.com

Nicole Fiorelli
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (216) 861-4211
Fax: (440) 352-3469
Email: nfiorelli@dworkenlaw.com

To Defendants:

Steven E. Seasly
Ann E. Knuth
Rachel Kolecky
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Telephone: (216) 621-0150
Fax: (216) 241-2824
Email: sseasly@hahnlaw.com
        aknuth@hahnlaw.com
        rkolecky@hahnlaw.com

## 7. NO ADMISSION OF LIABILITY

**7.1** Defendants deny all of the allegations made by Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a collective should be certified for any purposes other than for settlement. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 8. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**8.1** Further Acts. Plaintiffs and Defendants agree to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**8.2** No Assignment. The Named Plaintiff represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**8.3** Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.

**8.4**   Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Defendants, their affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.5**   Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**8.6**   Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.7**   Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.8**   Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Ohio, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**8.9**   Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**8.10**   Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**8.11**   Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**8.12**   Facsimile, Electronic, and E-mail Signatures.  Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to

counsel for the other party.  Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**8.13**   Signatories.  This Agreement is valid and binding if signed by Defendants' authorized representative and the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

**DATED:**   2/25/2021                     **WENCO ASHLAND, INC.**

By:   *Todd Shonkwiler*
_____

Director of Human Resources
_____

**DATED:**   2/25/2021                     **WENCO AKRON LLC**

By:   *Todd Shonkwiler*
_____

Director of Human Resources
_____

**DATED:**   2/25/2021                     **WENCO INDIANA LLC**

By:   *Todd Shonkwiler*
_____

Director of Human Resources
_____

**DATED:**   2/25/2021                     **WENCO MANAGEMENT LLC**

By:   *Todd Shonkwiler*
_____

Director of Human Resources
_____

DATED:  2/25/2021          **WENCO WOOSTER, LLC**

                          **By:** *Todd Shonkwiler*
                          _____

                          Director of Human Resources
                          _____


DATED:  _____      **JASON ADAMS**

                          _____

DATED: _____       **WENCO WOOSTER, LLC**

                             **By:** _____

                             _____

DATED: 2/22/2021 _____       **JASON ADAMS**

                             DocuSigned by:

                             F0F4DD9EF74B4BF... _____

# EXHIBIT A

## THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

*Jason Adams v. Wenco Ashland, Inc., et al.*, Case No. 19 Civ. 1544

## NOTICE OF COLLECTIVE ACTION SETTLEMENT

*This is a court authorized notice.  This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE CAREFULLY.  YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WORKED AS AN ASSISTANT GENERAL MANAGER FOR WENCO WENDY'S AND PREVIOUSLY SUBMITTED A CONSENT TO JOIN THIS CASE, AND YOU ARE ENTITLED TO A PAYMENT FROM A COLLECTIVE ACTION SETTLEMENT.**

**A settlement check payable to you is enclosed.  Read this entire Notice before signing and cashing the check.**

**Deadline: The last day to cash the enclosed settlement check is [120 days from mailing].  After that date, the enclosed check will be null and void, and you will no longer be eligible for a payment from the above-captioned action.**

- This Notice is directed to all individuals who were employed by Wenco Ashland, Inc., Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc. (collectively, "Defendants" or "Wenco Wendy's") as exempt Assistant General Managers ("AGMs") and salaried Restaurant Managers ("RMs") and previously opted-in to (or joined) this lawsuit by filing a "Consent to Join" form in this lawsuit.

- This lawsuit was brought by a former Assistant General Manager (the "Plaintiff") who claims that Wenco Wendy's misclassified him and other AGMs and RMs (together "Collective Members") as exempt from overtime under the Fair Labor Standards Act ("FLSA").  As a result, Plaintiff alleges that Wenco Wendy's failed to pay AGMs overtime for the hours they worked over 40 in a workweek as required by the FLSA.

- Wenco Wendy's denies these allegations and believes that AGMs were and are properly classified as exempt and received all monies to which they are entitled.

- The Plaintiff and Wenco Wendy's have agreed to this settlement to avoid the burden, expense, inconvenience, and uncertainty of on-going litigation.  The Court has approved this settlement but has not made any ruling on the merits of the Plaintiff's claims or Wenco Wendy's defenses.

- **A settlement check for $XX, representing your share of the settlement, is enclosed.**  This amount is determined by the allocation formulation created by the settlement and based primarily on the number of weeks in which you worked as an exempt AGM between July 8, 2016 through September 29, 2020 (the "Covered Period").

**Questions?**
Contact Nina Martinez or Pooja Shethji at (347) 390-2123 or wenco-wendysovertimeinvestigation@outtengolden.com

<u>**This notice contains important information that affects your rights.  Please read it carefully.**</u>

## BASIC INFORMATION

| 1.  WHY AM I RECEIVING THIS NOTICE AND WHAT IS THE CASE ABOUT? |
|---|

You are receiving this Notice because you previously opted-in to (or joined) this lawsuit.  This Notice explains the terms of the settlement, your rights, and what claims are being released by AGMs and RMs who are "Collective Members."

| 2.  WHY IS THIS A COLLECTIVE ACTION? |
|---|

In a collective action, one or more individuals can bring a lawsuit on behalf of others who are "similarly situated" to them.  It is similar, though not identical, to a class action.  The individual who initiated this action is called the "Plaintiff."  By previously completing and returning a "Consent to Join" form, you joined the case and became part of the "Collective."  In a collective action, the Plaintiff asks the court to resolve the issues for everyone in the collective.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 3.  WHAT DOES THE SETTLEMENT PROVIDE? |
|---|

Wenco Wendy's has agreed to pay money into a settlement fund, a portion of which has been allocated among Collective Members who qualify for a settlement payment based primarily upon the number of weeks worked as an AGM in the Covered Period.  The settlement fund will cover settlement payments to Collective Members, and a service award to Plaintiff for his service in obtaining this settlement.  Wenco Wendy's has also agreed to separately pay for attorneys' fees and costs, the cost of settlement administration, and mediation, the sum of which does *not* come from the settlement fund to Collective Members.  Any uncashed checks by Collective Members will revert back to Wenco Wendy's.

**Checks that are not cashed on or before [insert 120 days from mailing] will be null and void.**

| 4.  HOW MUCH MONEY AM I RECEIVING AND HOW WAS IT CALCULATED? |
|---|

Based on the allocation formula that has been approved by the Court, you are receiving a settlement payment of $_____.  One-half of the payment will be considered wages and taxes will be withheld from that portion.  The other half will be considered non-wage compensation and taxes will not be withheld.  Please consult your tax advisor or accountant regarding the taxability of this settlement payment.

The allocation formula takes into account the number of weeks in which you worked as an AGM during the Covered Period.  The settlement agreement executed by the Parties and approved by the Court (the "Settlement Agreement") contains the allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 8 below.

# HOW YOU GET A PAYMENT

### 5.  HOW DO I GET MY PAYMENT?

Your settlement check is enclosed.  All you have to do is sign and cash the settlement check.

### 6.  WHAT AM I GIVING UP BY PARTICIPATING IN THE SETTLEMENT?

By cashing the enclosed check, you are releasing Defendants Wenco Ashland, Inc., Wenco Akron LLC, Wenco Indiana LLC, Wenco Management LLC, and Wenco Wooster, Inc., and their respective current and former officers, directors, managers, employees, agents, insurers, successors, predecessors, as well as those of its respective affiliates, parents, subsidiaries, attorneys, and other related entities from any and all state or federal wage and hour claims that were or, could have been brought based on the specific factual allegations contained in the Litigation that arise from your employment as an exempt classified AGM or RM, that occurred or are alleged to have occurred at any time through the date this Agreement is executed, including without limitation claims for overtime compensation, penalties, liquidated damages, interest, attorneys' fees or expenses, and further including claims under the Fair Labor Standards Act , 29 U.S.C. § 201, *et seq.* or any applicable state statute, whether known or unknown, in law or in equity, that accrued or accrue prior to the date this Agreement is executed.

# THE LAWYERS REPRESENTING YOU

### 7.  DO I HAVE A LAWYER IN THIS CASE AND HOW WILL THEY BE PAID?

By previously opting into the case, you agreed to have Counsel for Plaintiff and Collective Members, who are listed in Section 9 below, represent you for all purposes in the lawsuit, and to make decisions on your behalf concerning the litigation and any settlement.  You also acknowledged your understanding that, in the event of any settlement or judgment, Counsel for Plaintiff and Collective Members would petition the Court to award attorneys' fees for the greater of (1) their hourly rates multiplied by the number of hours expended on the lawsuit, or (2) one-third of the gross settlement.  The Court has approved Counsel for Plaintiff's and Collective Members' request for payment of attorneys' fees and costs and expenses.  These fees are to compensate Counsel for Plaintiff and Collective Members for investigating the facts, litigating the case, and negotiating the settlement.  Wenco Wendy's will pay Counsel for Plaintiff and Collective Members attorneys' fees and expenses separately from the settlement fund, which means that your settlement amount has not been reduced by such payments.  The Court has also approved a payment of $8,000.00 to the Plaintiff, in recognition of the risks he took, the scope of the release he executed, and his service to Collective Members.

# FOR MORE INFORMATION

### 8.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This Notice summarizes the terms of the settlement.  More details are in the Settlement Agreement.  You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[Claims Administrator]
Wenco Wendy's AGM Settlement
[insert address]
[insert phone number]]
[insert email]
[insert fax]

## 9.  HOW DO I GET MORE INFORMATION?

If you have other questions about the settlement, you can contact the Claims Administrator, whose contact information is included in Section 8 above, or Counsel for Plaintiff and Collective Members at the addresses and/or telephone numbers below.

Molly Brooks
Nina Martinez
Pooja Shethji
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
wenco-wendysovertimeinvestigation@outtengolden.com

Nicole Fiorelli
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (216) 861-4211

DATED:  _____

# Exhibit B

# IMPORTANT REMINDER REGARDING
## WENCO WENDY'S OVERTIME SETTLEMENT PAYMENT

Within the last two months, you should have received a Notice of Settlement and a settlement check for the collective action settlement for unpaid overtime against Wenco Wendy's. If you have any questions about the notice or the settlement payment, or if you did not receive or no longer have the notice or check, you should contact Nina Martinez or Pooja Shethji at Outten & Golden LLP by calling (347) 390-2123 or by emailing wenco-wendysovertimeinvestigation@outtengolden.com.

**IMPORTANT: Our records indicate that you have not yet cashed your settlement payment.**

[Claims Administrator]
Wenco Wendy's AGM Settlement
[insert address]
[insert phone number]]
[insert email]
[insert fax]

**Checks that are not cashed on or before [insert 120 days from mailing] will be null and void.**

Wenco Wendy's Overtime Settlement                                                    [postage]

**[ADMIN]**
**[ADMIN ADDRESS]**
**[ADMIN ADDRESS 2]**




[first name] [last name]
[address] [address2]
[city], [state]  [zip]